Robert N. HALL, Plaintiff,

v.

TYCO INTERNATIONAL LTD., Tyco Electronics, and AMP Inc., Defendants.

No. 1:02CV00839.

United States District Court, M.D. North Carolina.

July 27, 2004.

Robert N. Hall, Kernersville, NC, pro se.

Ronald R. Davis, Womble Carlyle Sandridge & Rice, Lisa M. Drabik, Winston–Salem, NC, Charles A. Edwards, Womble Carlyle Sandridge & Rice, Raleigh, NC, for Defendants.

*MEMORANDUM OPINION*

BEATY, District Judge.

I. INTRODUCTION

Plaintiff Robert N. Hall ("Plaintiff"), appearing pro se, brings multiple claims against Tyco International Ltd. ("Tyco International"), Tyco Electronics Corporation ("Tyco Electronics"), and AMP Inc. ("AMP"). Plaintiff's claims against AMP and Tyco Electronics are essentially the same, as it appears that AMP Inc. was renamed Tyco Electronics Corp. subsequent to Plaintiff's termination. Therefore, unless specifically noted, the Court will refer to AMP and Tyco Electronics collectively as "Tyco Electron-

ics."[1] Plaintiff also seeks to amend his Complaint to state certain of his claims against Tyco International (US) Inc. ("Tyco US") and the Retirement Committee of Tyco International (US) ("Retirement Committee"). Because Tyco U.S. and the Retirement Committee are not yet a part of this lawsuit, when using the term "Defendants," the Court will be referring only to Tyco Electronics and Tyco International.[2]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Viewing the allegations in Plaintiff's Complaint in the light most favorable to Plaintiff, the Court will recount the relevant background facts surrounding Plaintiff's claims against Defendants.[3] Plaintiff was an employee of AMP (now Tyco Electronics) from May 22, 1978, until April 29, 1999, when he was involuntarily terminated. On the date of his termination, Plaintiff was forty-six years old. AMP was acquired by Tyco International on April 1, 1999, and was apparently renamed Tyco Electronics on September 13, 1999. During Plaintiff's employment, Plaintiff participated in the AMP Pension Plan, the AMP Employee Savings and Thrift Plan, and an AMP employee stock purchase program. At or subsequent to Tyco International's purchase of AMP, Plaintiff became a participant in the Tyco Retirement Savings and Investment Plan ("RSIP"), a 401(k) plan. He was also a participant in the AMP Pension Plan, which was apparently merged into the Raychem Pension Plan on September 30, 2000, which was then renamed the Tyco Electronics Pension Plan ("TEPP") on Octo-

ber 1, 2000. Plaintiff also owns shares of stock in Tyco International, which is traded on the New York Stock Exchange.

In Plaintiff's lawsuit against Defendants, Plaintiff asserts a number of claims relating to his employment, his 401(k) plan, his pension plan, and his ownership of Tyco International stock. Plaintiff asserts his first, fourth, fifth, sixth, and seventh claims solely against Tyco Electronics. In Plaintiff's first claim, Plaintiff seeks reimbursement of travel expenses Plaintiff alleges Tyco Electronics owes him. In Plaintiff's fourth claim, Plaintiff alleges that he was terminated on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and the public policy of North Carolina. In Plaintiff's fifth claim, Plaintiff alleges that Tyco Electronics violated the ADEA by not allowing him to participate in its early retirement program. In Plaintiff's sixth claim, Plaintiff alleges that Tyco Electronics is required to give him a lump sum payout from his pension plan. Finally, in Plaintiff's seventh claim, Plaintiff in actuality makes a number of claims against Tyco Electronics for wages and benefits.

Plaintiff asserts his second, third, and eighth claims solely against Tyco International. In Plaintiff's second claim, Plaintiff alleges that Tyco International breached its fiduciary duty with respect to the RSIP (Plaintiff's 401(k) plan). In Plaintiff's third claim, Plaintiff alleges that Tyco International improperly denied his request to include a shareholder proposal in Tyco International's proxy materials. And in Plaintiff's eighth

1. Plaintiff was employed with AMP before it was acquired by Tyco International. Although it is unclear from the information the parties have provided, it appears that Tyco International acquired AMP and then renamed AMP to "Tyco Electronics Corp." Therefore, to the extent that Plaintiff brings claims against AMP, an entity which apparently no longer exists, the Court will address these claims as surviving against Tyco Electronics. As such, unless specifically noted, the Court's references to Plaintiff's claims against Tyco Electronics also refer to whatever claims Plaintiff has asserted against AMP. The Court, however, finds that it is not appropriate at this time to dismiss AMP from this lawsuit because further factual development could indicate that AMP is also properly subject to suit as the predecessor to Tyco Electronics.

2. Based upon Plaintiff's Complaint and the documents filed by the parties, it appears to the Court that Tyco International is a foreign holding company incorporated in Bermuda. Tyco International appears to wholly own, pursuant to a complex corporate structure, Tyco Electronics and Tyco US.

3. The Court notes that certain background facts are based upon pleadings other than the Complaint. These background facts are merely recounted to provide a more complete picture of Plaintiff's claims because the allegations in Plaintiff's pro se Complaint are extremely limited.

claim, Plaintiff alleges that officers and directors of Tyco International committed securities fraud in violation of the Securities Exchange Act of 1934 ("Securities Exchange Act").

In summary, and as discussed more fully below, Plaintiff brings federal claims pursuant to the ADEA (fourth and fifth claims), the Employee Retirement Income Security Act ("ERISA") (second claim, sixth claim, and possibly part of the seventh claim), and the Securities Exchange Act (third and eighth claims). Plaintiff further brings state-law claims for wrongful discharge (fourth claim), breach of contract (first and seventh claims), conversion (seventh claim), and possibly violation of the North Carolina Wage and Hour Act (first and seventh claims).

Plaintiff filed his Complaint [Document # 1] alleging these various claims on September 30, 2002. Tyco Electronics filed a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and for Judgment on the Pleadings Under Fed.R.Civ.P. 12(c) [Document # 8] (hereinafter "Tyco Electronics' Motion to Dismiss") on December 16, 2002, claiming that Plaintiff's Complaint fails to state claims against Tyco Electronics upon which relief may be granted. Tyco International filed a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) and (3) [Document # 10] on December 16, 2002, claiming that this Court does not have personal jurisdiction over Tyco International and that venue is improper against Tyco International. On the same day, Tyco International also filed a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and for Judgment on the Pleadings Under Fed.R.Civ.P. 12(c) [Document # 12] claiming that even if this Court has personal jurisdiction over Tyco International and venue is proper, Plaintiff's Complaint fails to state claims against Tyco International upon which relief may be granted.

On January 27, 2003, Plaintiff filed a Motion to Amend Complaint [Document # 17] (hereinafter "First Motion to Amend") to add Tyco U.S. as a defendant to each of Plaintiff's eight claims. On March 10, 2003, Plaintiff filed a Second Motion to Amend Complaint [Document # 28] (hereinafter "Second Motion to Amend") seeking to assert claims against the Retirement Committee and to assert additional claims against Tyco Electronics and Tyco International. Although Defendants did not object to Plaintiff's First Motion to Amend, they do object to Plaintiff's Second Motion to Amend. (*See* Defs.' Br. Opp. Pl.'s 2d Mot. Amend [Doc. # 33].) In their Response to Plaintiff's Second Motion to Amend [Document # 32], Defendants requested oral argument under Local Rule 7.3(c)(1). Finally, on April 10, 2003, Plaintiff filed a Motion for Sanctions and Brief in Support of Motion for Sanctions [Document # 35] seeking to strike from the record Defendants' Response to Plaintiff's Second Motion to Amend and Defendants' Brief in Opposition to Plaintiff's Second Motion to Amend.

The Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Because Plaintiff is a resident of North Carolina, Tyco Electronics is incorporated in Pennsylvania, and Tyco International is incorporated in Bermuda, all parties are diverse, and the Court therefore has subject matter jurisdiction over Plaintiff's state-law claims (as well as his federal claims) pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy, exclusive of interest and costs, is in excess of $75,000. Subject matter jurisdiction being proper for all of Plaintiff's claims, the Court will painstakingly undertake the task of addressing the numerous motions before it. The Court will begin with Tyco International's Motion to Dismiss for lack of personal jurisdiction and improper venue.

### III. DEFENDANT TYCO INTERNATIONAL'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Tyco International contends that this Court does not have personal jurisdiction over it. Pursuant to Rule 12(b)(3), Tyco International also contends that venue is improper in this district. The Court will consider Tyco International's arguments in turn.

A. Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction

As this Court has previously held in *Regent Lighting Corp. v. Galaxy Electrical Manufacturing, Inc.*, 933 F.Supp. 507 (M.D.N.C.1996), when a court's personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the burden is ultimately on the plaintiff to prove the existence of jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993)). In deciding a motion to dismiss for lack of personal jurisdiction, the court may rule on the basis of the motion papers, supporting legal memoranda, relevant allegations of the complaint, and the affidavits; postpone the decision to permit discovery; or hold an evidentiary hearing. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989); *Crown Cork & Seal Co. v. Dockery*, 886 F.Supp. 1253, 1256 (M.D.N.C.1995). If the court, as in the present case, rules on the motion without an evidentiary hearing, then the plaintiff need only prove a prima facie case of personal jurisdiction. *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993); *accord Carefirst of Md.*, 334 F.3d at 396. Although the court must draw all reasonable inferences arising from the proof in the plaintiff's favor, the court may look at both the plaintiff's and the defendant's proof (i.e., the pleadings, legal memoranda, and affidavits) when drawing these inferences. *Mylan Labs.*, 2 F.3d at 62.

As an initial matter, the Court finds it helpful to again clarify which claims Plaintiff is actually asserting against Tyco International. Plaintiff's Complaint contains three claims against Tyco International, which consist of the following: second claim (ERISA claim relating to Plaintiff's 401(k) plan); third claim (Securities Exchange Act claim for failure to include Plaintiff's shareholder proposal in Tyco International's proxy materials); and eighth claim (Securities Exchange Act claim for securities fraud). Plaintiff contends that this Court has personal jurisdiction over Tyco International under the nationwide-service-of-process provision of the Securities Exchange Act, 15 U.S.C. § 78aa, and the nationwide-service-of-process provision of ERISA, 29 U.S.C. § 1132(e)(2).

Tyco International advances a number of arguments in support of its Motion to Dismiss for lack of personal jurisdiction. It first contends that because Plaintiff's "Complaint omits any allegation or discussion of the basis on which this Honorable Court can assert personal jurisdiction over International," the Court can dismiss Plaintiff's Complaint on that basis alone. (Def. Tyco Int'l's Br. Supp. Mot. Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) & (3) [Doc. # 11] (hereinafter Br. Supp. 12(b)(2) & (3) Mot. Dismiss) at 4.) Tyco International, however, cites no authority for this proposition, and the authority the Court has located is to the contrary. *See., e.g., D'Addario v. Geller*, 264 F.Supp.2d 367, 390 n. 29 (E.D.Va.2003) (holding that the court could "consider 15 U.S.C. § 78aa as a basis for personal jurisdiction, even though plaintiff did not specifically raise it in his pleadings to sustain personal jurisdiction") (quoting 4 Wright and Miller, *Federal Practice and Procedure* § 1067.6 (3d ed.2002) for the proposition that " 'strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants' "). Regardless, it is clear to the Court, and obviously clear to Tyco International since it addresses the issue, that Plaintiff seeks to invoke the nationwide-service-of-process provisions of the Securities Exchange Act and ERISA in order to obtain jurisdiction over Tyco International. In addition, the Court notes that in Plaintiff's proposed Second Amended Complaint, Plaintiff corrects this purported pleading deficiency by specifically referring to the nationwide-service-of-process provisions of the Securities Exchange Act and ERISA as his bases for asserting jurisdiction over Tyco International. Thus, especially in light of Plaintiff's pro se status and the possibility that Tyco International may be subject to nationwide service

of process, the Court will not dismiss Tyco International for lack of personal jurisdiction due to Plaintiff's alleged procedural failure to properly plead the basis on which he seeks to assert personal jurisdiction.

Tyco International further contends, however, that Plaintiff is precluded on substantive grounds from exercising jurisdiction over it under the nationwide-service-of-process provisions of either the Securities Exchange Act or ERISA. The Court will address Tyco International's contentions in turn.

### 1. Nationwide Service of Process Under the Securities Exchange Act

Because Plaintiff's third claim (shareholder proposal claim) and eighth claim (securities fraud claim) are brought pursuant to the Securities Exchange Act, the jurisdictional provisions of Section 27 of that Act (15 U.S.C. § 78aa) are implicated. Section 27 states, in pertinent part, the following:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any … district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. Section 27 has been interpreted as providing for nationwide service of process; thus, so long as Tyco International's contacts with the United States as a whole are sufficient to satisfy the due process provisions of the Fifth Amendment, section 27 would allow this Court to exercise personal jurisdiction over Tyco International. *See Miller v. Asensio*, 101 F.Supp.2d 395, 402 (D.S.C.2000) (collecting cases).

Tyco International, as a registrant on the New York Stock Exchange, does not contend that it lacks sufficient contacts with the United States to prevent this Court from exercising personal jurisdiction over it. Tyco International instead makes the following argument in support of its position that Plaintiff may not take advantage of the nationwide-service-of-process provision of the Securities Exchange Act: "It is axiomatic that, if a complaint does not state proper claims against International under the Exchange Act, then the plaintiff cannot rely on the Exchange Act to confer personal jurisdiction over the defendant." (Tyco Int'l's Br. Supp. 12(b)(2) & (3) Mot. Dismiss at 5.) Thus, it appears to be Tyco International's position that because Plaintiff's Securities Exchange Act claims against it would not survive its Rule 12(b)(6) motion, Plaintiff may not use Section 27 to assert personal jurisdiction over Tyco International. Tyco International, however, again cites no authority for this position.

The authority the Court has located, however, indicates that Plaintiff's claims must only be colorable to permit him to take advantage of the nationwide-service-of-process provisions of the Securities Exchange Act or ERISA. The Court notes that in construing whether a plaintiff could take advantage of the nationwide-service-of-process provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the district court of South Carolina held in *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267 (D.S.C. 1999), that " '[w]hen a federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision.' " *Id.* at 271 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997)). Thus, Tyco International must meet the " 'high burden' " of demonstrating that Plaintiff's Securities Exchange Act claims are not colorable. *See id.* (quoting *Republic of Panama*, 119 F.3d at 941). To meet this burden, Tyco International must demonstrate that Plaintiff's claims are " 'so insubstantial, implausible, … or otherwise devoid of merit as to deprive [Plaintiff] of the right to utilize [the Act's] nationwide service of process provision.' " *Id.* (first alteration in original) (some internal quotations omitted) (quoting *Republic of Panama*, 119 F.3d at 941); *accord ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 629 (4th Cir.1997) (citing *Republic of Panama*).

Thus, unless Tyco International meets this high burden, Plaintiff may take advantage of the Securities Exchange Act's nationwide-service-of-process provision. *See Miller*, 101 F.Supp.2d at 399 (citing *Sadighi*) (applying the "colorable claim" standard where the plaintiff was seeking to utilize the nationwide-service-of-process provision of the Securities Exchange Act). Tyco International does not address the "colorable claim" standard but instead seems to argue that because Plaintiff's claims fail under the Rule 12(b)(6) standard, this Court cannot assert personal jurisdiction over Tyco International. The Court, however, disagrees. With respect to Plaintiff's shareholder proposal claim (third claim), while the Court ultimately finds that this claim should be dismissed, the Court finds that Plaintiff has alleged a colorable shareholder proposal claim.

With respect to Plaintiff's securities fraud claim (eighth claim), as discussed in section IV.B.2 below addressing Tyco International's Motion to Dismiss this claim pursuant to Rule 12(b)(6), the Court ultimately finds that this claim is not properly pled pursuant to the strict requirements of the Private Securities Litigation Reform Act ("PSLRA"). However, the Court does not believe that Plaintiff's eighth claim is not colorable so as to preclude the Court from exercising personal jurisdiction over Tyco International with respect to Plaintiff's eighth claim. In conclusion, therefore, the Court finds that Plaintiff may take advantage of the Securities Exchange Act's nationwide-service-of-process provision to establish personal jurisdiction over Tyco International with respect to both Plaintiff's shareholder proposal (third) and securities fraud (eighth) claims.

■ Therefore, with respect to Plaintiff's third and eighth claims, Plaintiff need only make a prima facie showing that Tyco International has sufficient minimum contacts with the United States as a whole. Plaintiff's allegations (which are not refuted by Tyco International) demonstrate that Tyco International is an actively traded registrant on the New York Stock Exchange. In addition, Tyco International does not even attempt to argue that it lacks minimum contacts with the United States. Therefore, the Court finds that Plaintiff has made out a prima facie case that Tyco International has sufficient minimum contacts with the United States to support jurisdiction with respect to Plaintiff's third claim (shareholder proposal claim) and his eighth claim (securities fraud claim). *Cf. Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 365, 368–73 (3d Cir.2002) (finding that a foreign corporation had sufficient minimum contacts with the United States because its American Depositary Receipts (which are analogous to shares of stock) traded in the over-the-counter market in the United States).

However, Plaintiff's demonstration of Tyco International's minimum contacts with the United States does not end the Court's inquiry. For the Court to exercise personal jurisdiction over Tyco International with respect to Plaintiff's third claim (shareholder proposal claim) and his eighth claim (securities fraud claim), the exercise of jurisdiction must comport with the Due Process Clause of the Fifth Amendment, that is, "the plaintiff's choice of forum [must] be fair and reasonable to the defendant." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir.2000). Thus, "the Fifth Amendment ... protects individual litigants against the burdens of litigation in an unduly inconvenient forum." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir.1997). The burden is on Tyco International, however, to show that this Court's "assertion of personal jurisdiction over [it] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." *Denny's, Inc. v. Cake*, 364 F.3d 521, 524 n. 2 (4th Cir.2004) (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997)), *reh'g and reh'g en banc denied*, No. 03–1326 (4th Cir. May 7, 2004), *petition for cert. filed*, No. 04–6 (U.S. June 30, 2004). At least at this stage of the proceedings, Tyco International has failed to carry its high burden to show that extreme inconvenience or unfairness would result from this Court's exercise of personal jurisdiction over it. Therefore, the Court finds that, with respect to both Plaintiff's third (shareholder proposal) and eighth (securities fraud) claims, the

Court may exercise personal jurisdiction over Tyco International.

### 2. Nationwide Service of Process Under ERISA

■ The Court will now address Tyco International's contentions that this Court lacks personal jurisdiction over it with respect to Plaintiff's second claim (RSIP or 401(k) plan claim), which is brought pursuant to ERISA. Like the Securities Exchange Act, ERISA also contains a nationwide-service-of-process provision. *See* 29 U.S.C. § 1132(e)(2) (ERISA § 502(e)(2)). Section 502(e)(2) of ERISA provides as follows:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

*Id.* As this Court held in *Schrader v. Trucking Employees of North Jersey Welfare Fund, Inc.,* 232 F.Supp.2d 560 (M.D.N.C. 2002), "[t]his provision, which provides for nationwide service of process, 'has been interpreted for purposes of personal jurisdiction as a "national contacts test." ' " *Id.* at 571 (quoting *Strategic Outsourcing, Inc. v. Commerce Benefits Group Agency, Inc.,* 54 F.Supp.2d 566, 570 (W.D.N.C.1999)). Thus, as with this Court's discussion of the Securities Exchange Act's nationwide-service-of-process provision, this Court held in *Schrader* that "when a federal court asserts personal jurisdiction over a defendant in a suit based on a statute that includes a provision for nationwide service of process, the relevant inquiry is not whether the defendant has sufficient minimum contacts with the forum state, but rather, whether the defendant has sufficient contacts with the United States as a whole." *Id.* (collecting cases). In addition, "[t]he reach of federal jurisdiction over [the defendant] must also comport with the mandates of due process" under the Fifth Amendment. *Id.* Under *Schrader,* therefore, if the defendant in an ERISA case has minimum contacts with the United States as a whole, so long as the court's exercise of jurisdiction over the defendant would comport with the Due Process Clause of the Fifth Amendment, the court may exercise jurisdiction over the defendant. *See id.*

■ Tyco International advances several reasons why Plaintiff may not utilize the nationwide-service-of-process provision of ERISA to assert personal jurisdiction over Tyco International. As with Plaintiff's Securities Exchange Act claims (third and eighth claims), Tyco International first argues that because Plaintiff's ERISA claim is without merit, Plaintiff may not invoke ERISA's nationwide-service-of-process provision. As discussed above with respect to Plaintiff's Securities Exchange Act claims, Plaintiff need only make out a colorable ERISA claim to utilize ERISA's nationwide-service-of-process provision. Regardless, as discussed more fully in section IV.B.1 below addressing Tyco International's Motion to Dismiss Plaintiff's second claim pursuant to Rule 12(b)(6), Plaintiff's second claim against Tyco International survives Tyco International's Motion to Dismiss pursuant to Rule 12(b)(6). Therefore, Plaintiff's claim is by definition colorable, and Plaintiff may therefore take advantage of ERISA's nationwide-service-of-process provision.

Tyco International further contends, however, that even if Plaintiff has stated a proper ERISA claim against Tyco International, this Court's decision in *Schrader* still should not apply so as to permit the Court to exercise personal jurisdiction over Tyco International pursuant to ERISA's nationwide-service-of-process provision. Tyco International advances two primary arguments in support of its assertion that *Schrader* does not allow Plaintiff to obtain personal jurisdiction over Tyco International. First, Tyco International contends that *Schrader* is distinguishable because Tyco International is a foreign corporation. In support of its position, Tyco International relies upon the Fourth Circuit Court of Appeals' decision in *Young v. FDIC,* 103 F.3d 1180 (4th Cir.1997), in which the court of appeals restated the general rule enunciated by the Supreme Court "that courts should place 'significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over nation-

al borders' because of the 'unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Id.* at 1192 (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)). The facts in *Young,* however, are readily distinguishable from those in the present case. In *Young,* the plaintiff brought a state-law professional-negligence claim in South Carolina against the defendant, a Bahamian partnership. *Id.* at 1190. Because the plaintiff did not have the benefit of a nationwide-service-of-process-provision, the plaintiff had to establish that the defendant had minimum contacts with South Carolina, as opposed to the United States. Because the defendant's only contact with South Carolina was receiving account information from a South Carolina bank for use in an audit, the court found that the defendant did not have a "substantial connection" with South Carolina. *Id.* at 1191.

In the present case, however, Plaintiff need only make a prima facie showing that Tyco International has sufficient minimum contacts with the United States as a whole. Plaintiff has alleged that Tyco International violated its fiduciary duties with respect to the RSIP, which is located in the United States. Therefore, the Court finds that Plaintiff has demonstrated a prima facie showing that Tyco International has sufficient minimum contacts with the United States as a whole. The burden therefore shifts to Tyco International to demonstrate that this Court's "assertion of personal jurisdiction over [it] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." *Denny's, Inc. v. Cake,* 364 F.3d 521, 524 n. 2 (4th Cir.2004) (quoting *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 627 (4th Cir.1997)), *reh'g and reh'g en banc denied,* No. 03–1326 (4th Cir. May 7, 2004), *petition for cert. filed,* No. 04–6 (U.S. June 30, 2004). Tyco International, however, has offered no evidence to show that it would be extremely inconvenient or burdensome for it to be subject to litigation in this forum. The Court therefore finds that litigation in this forum would not be unduly burdensome or inconvenient for Tyco International.

Tyco International next seems to contend that this Court should reconsider its holding in *Schrader* applying a national-contacts test to ERISA claims and instead apply a minimum-contacts-with-forum-state test to Plaintiff's ERISA claim against Tyco International. In support of its position that the Court should abandon *Schrader,* Tyco International cites cases from other circuits and districts that declined to apply a national-contacts test to ERISA claims. Tyco International, however, fails to cite any decisions within the Fourth Circuit in opposition to *Schrader,* nor does it dispute the validity of this Court's statement in *Schrader* that applying a national-contacts analysis to ERISA claims is supported by "the strong precedent from other Circuits as well as from district courts from within the Fourth Circuit (including this Court) ...." *Schrader,* 232 F.Supp.2d at 571 n. 13. In deciding *Schrader,* this Court also relied upon Fourth Circuit Court of Appeals' cases applying a national-contacts standard to claims brought pursuant to other acts with nationwide-service-of-process provisions. *See id.* (citing *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626 (4th Cir.1997) (RICO); *Hogue v. Milodon Eng'g, Inc.,* 736 F.2d 989 (4th Cir.1984) (Bankruptcy Act)). Recently, in *Denny's, Inc. v. Cake,* 364 F.3d 521 (4th Cir.2004), the Fourth Circuit Court of Appeals confirmed that a national-contacts analysis would apply to claims brought pursuant to ERISA. Therefore, this Court's decision in *Schrader* is applicable and this Court may validly exercise personal jurisdiction over Tyco International with respect to Plaintiff's ERISA claim against Tyco International.

For the foregoing reasons, therefore, Tyco International's Motion to Dismiss Plaintiff's second (RSIP), third (shareholder proposal), and eighth (securities fraud) claims for lack of personal jurisdiction is denied. The Court will therefore address Tyco International's contention that venue is not proper in this district.

**B. Motion to Dismiss Pursuant to Rule 12(b)(3) for Improper Venue**

Tyco International also contends that venue is not proper in this district. The Court,

however, finds that venue is proper under the general venue statute, 28 U.S.C. § 1391. Section 1391(d)[4] states that "[a]n alien may be sued in any district." In the present case, Plaintiff has alleged in his Complaint that Tyco International is a Bermuda Corporation, (Compl. ¶ 7), and the evidence proffered by Tyco International supports this allegation. (Aff. Supp. Mot. Dismiss Tyco Int'l Ltd. [Doc. # 10] ¶ 3 (stating that "[Tyco] International is a Bermuda corporation with its principal place of business in Hamilton, Bermuda").) Because Tyco International is an alien, venue is proper in any district, including the Middle District of North Carolina. *See In re Triton Ltd. Sec. Litig.,* 70 F.Supp.2d 678, 683 (E.D.Tex.1999) (citing 28 U.S.C. § 1391(d)) (holding that venue in a Securities Exchange Act claim over an alien (in that case, a Cayman Islands corporation) could be based upon § 1391(d)); *Allen v. Lloyd's of London,* No. Civ. A. 3:96CV522, 1996 WL 490177, at *27 n. 10 (E.D.Va. Aug.23, 1996) (holding that venue in a Securities Exchange Act claim was proper in any district under § 1391(d)), *rev'd and remanded on other grounds,* 94 F.3d 923 (4th Cir. 1996); *Velcro Group Corp. v. Billarant,* 692 F.Supp. 1443, 1449 (D.N.H.1988) (holding that "[t]he rule that an alien can be sued in any district applies to a corporation incorporated in a foreign country just as it does to alien individuals"). As the district court noted in *Triton,* " § 1391(d) applies 'wholly outside the operation of all the federal venue laws, general and special.' " *Triton,* 70 F.Supp.2d at 683 (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 714, 92 S.Ct. 1936, 1941, 32 L.Ed.2d 428 (1972)). However, because Plaintiff is suing both an alien (Tyco International) and a non-alien (Tyco Electronics) defendant, "venue for the entire action is [only] proper in any district where it is correct as to the non-alien defendant." *Id.* (internal quotations omitted). In the present case, Tyco Electronics, the non-alien defendant, has conceded that venue is proper in this district. Therefore, venue is also proper in this district with respect to Tyco International, the alien defendant.

In summary, therefore, the Court finds that venue is proper for Tyco International in this district pursuant to 28 U.S.C. § 1391(d).[5] Therefore, Tyco International's Motion to Dismiss pursuant to Rule 12(b)(3) for improper venue is denied. As such, the Court will now address Tyco International's and Tyco Electronics' Motions to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

## IV. DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6)[6]

### A. Motion to Dismiss Standard

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dis-

---

4. The Court notes that Plaintiff failed to specifically allege in his Complaint that § 1391(d) could also be a basis for venue. However, "allegations showing that venue is proper need not be included in the complaint." *Dee–K Enters., Inc. v. Heveafil Sdn. Bhd.,* 985 F.Supp. 640, 643 (E.D.Va.1997).

5. Having found venue to be proper pursuant to § 1391(d), the Court specifically declines to address whether Plaintiff could establish venue based upon the provisions of ERISA, the Exchange Act, or any other provisions of 28 U.S.C. § 1391.

6. As an alternative to their Motions to Dismiss pursuant to Rule 12(b)(6), Defendants move for judgment on the pleadings pursuant to Rule 12(c). However, as another court in this district has recently held, "[i]n considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), facts presented in the pleadings and the inferences drawn therefrom must be viewed in the light most favorable to the non-moving party." *Jones v. GE Life and Annuity Assurance Co.,* No. 1:03CV241, 2004 WL 691749, at *1 (M.D.N.C. Mar 17., 2004) (footnote omitted) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999)). "In this respect, the standard applied to a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), i.e. [sic] the motion should only be granted if, after taking all well pleaded allegations in the complaint as true, the plaintiff can prove no set of facts entitling her to relief." *Id.* (citing *Edwards,* 178 F.3d at 243). Because Defendants have not filed an answer to Plaintiff's Complaint, Defendants' Motions are more properly construed as Motions to Dismiss pursuant to Rule 12(b)(6), and the Court will therefore address these Motions as Motions pursuant to Rule 12(b)(6), rather than Motions pursuant to Rule 12(c).

missals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (alteration in original) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (internal quotations omitted).

B. Discussion of Defendants' 12(b)(6) Motions with Respect to Plaintiff's Various Claims

1. Plaintiff's Second and Sixth Claims: 401(k) and Pension Plan Claims

As an initial matter, the Court first notes that with respect to Plaintiff's second (RSIP) and sixth (pension plan) claims, the Court finds it helpful to again clarify whom Plaintiff is presently suing—and attempting to sue in his proposed Amended Complaint—with respect to these claims. In Plaintiff's Complaint, Plaintiff brought his second claim (RSIP or 401(k) plan claim) against Tyco International and his sixth claim (TEPP or pension plan claim) against Tyco Electronics. In Plaintiff's First Motion to Amend, Plaintiff seeks to add Tyco U.S. as a defendant with respect to each of these claims. In Plaintiff's Second Motion to Amend, Plaintiff seeks to add Tyco Electronics as a defendant with respect to his second claim, Tyco International as a defendant with respect to his sixth

claim, and the Retirement Committee as a defendant with respect to both claims. Thus, although Plaintiff ultimately seeks to add each entity as a defendant with respect to both his second and sixth claims, at this stage of the proceedings, Plaintiff has only sued Tyco International in his second claim and Tyco Electronics in his sixth claim. Therefore, the Court will only consider whether to grant Tyco International's Motion to Dismiss Plaintiff's second claim and Tyco Electronics' Motion to Dismiss Plaintiff's sixth claim. Based in part upon the disposition of these Motions to Dismiss, the Court will then determine (in Section VI below) whether it is proper for the Court to allow Plaintiff to amend his Complaint to add Tyco Electronics, Tyco US, and/or the Retirement Committee as defendants with respect to Plaintiff's second (RSIP) and sixth (pension plan) claims.

In Plaintiff's second claim, Plaintiff alleges that he is a participant in the Tyco Retirement Savings and Investment Plan ("RSIP"), a 401(k) plan. Plaintiff alleges that during the latter half of 1999, Tyco International informed him that Fidelity Investments would replace Vanguard Group as the trustee and recordkeeper for the plan. He further alleges that from January 21, 2000, until March 2000, Tyco International imposed a "blackout" period on the RSIP and informed Plaintiff that his account would remain fully invested. However, according to Plaintiff, his RSIP account did not remain fully invested, and as a result he incurred a loss of $3931.40. Plaintiff therefore contends that Tyco International "failed to comply with its agreement and contractual and fiduciary responsibility . . . ." (Compl.¶ 25.)

In Plaintiff's sixth claim, Plaintiff alleges that Tyco Electronics improperly denied him a lump sum payment from the AMP Pension Plan (now the TEPP) when the plan was terminated. Plaintiff alleges that he requested a lump sum payment but was informed that he was not entitled to such a payment under the terms of the TEPP. Although Plaintiff's second and sixth claims are distinct, because Tyco International and Tyco Electronics raise similar challenges to these

claims, the Court will address these claims together.

### a. ERISA Preemption

Tyco International and Tyco Electronics first respond that both Plaintiff's second (RSIP) and sixth (TEPP) claims are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, because both the RSIP (the 401(k) plan) and the TEPP (the pension plan) are "employee pension benefit plans" as defined in 29 U.S.C. § 1002(2)(A). Plaintiff does not dispute that ERISA governs both his second and his sixth causes of action. Therefore, to the extent that Plaintiff brings state-law claims against Defendants with respect to the RSIP or the TEPP, they are preempted by ERISA, and the Court will treat them as ERISA claims properly before the Court. *See* 29 U.S.C. § 1144(a) (ERISA § 514(a)) (stating that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan"); *see also Aetna Health Inc. v. Davila*, — U.S. —, —, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004) (holding that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted").

### b. Proper Defendants Under ERISA

Plaintiff seems to bring his second claim (RSIP claim) under either or all of the following subsections of ERISA section 502: 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); 502(a)(2), 29 U.S.C. § 1132(a)(2); and 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiff seems to bring his sixth claim (pension plan claim) solely pursuant to ERISA subsection 502(a)(1)(B). ERISA section 502 (29 U.S.C. § 1132) provides as follows:

§ 1132. Civil enforcement

(a) Persons empowered to bring a civil action. A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan

. . . .

Tyco International contends that it may not be sued under ERISA because it has no involvement with the management of the RSIP. (Tyco Int'l's Br. Supp. 12(b)(6) Mot. [Doc. # 13] at 18.) Tyco Electronics also contends that it may not be sued under ERISA because it is not the pension plan or the pension-plan administrator. (Tyco Elecs.' Br. Supp. Mot. Dismiss [Doc. # 9] at 9–10.)

The Court must determine, therefore, whether Plaintiff has adequately alleged that Tyco International is a proper defendant under ERISA subsections 502(a)(1)(B), 502(a)(2), and/or 502(a)(3) and whether Plaintiff has adequately alleged that Tyco Electronics is a proper defendant under ERISA subsection 502(a)(1)(B). To make this determination, the Court will first discuss the relevant legal standards governing who is a proper defendant under these subsections. The Court will then determine, in light of these legal standards, whether Plaintiff has sufficiently alleged that Tyco International and Tyco Electronics are proper defendants with respect to Plaintiff's second (RSIP) and sixth (TEPP) claims, respectively.

### (1) Who Is a Proper Defendant Pursuant to ERISA Section 502

### (a) Subsections 502(a)(1)(B) and 502(a)(2)

With respect to who is the proper defendant under ERISA subsection 502(a)(1)(B), the district court's decision in *McRae v. Ro-*

*gosin Converters, Inc.*, 301 F.Supp.2d 471 (M.D.N.C.2004), is instructive. The court in *McRae* noted that "[a]lthough the Fourth Circuit has not published a decision that expressly holds who is a proper defendant in an action for benefits under Section 1132(a)(1)(B), the Fourth Circuit appears to be aligned with those circuits that permit a plaintiff to bring an action to recover benefits under Section 1132(a)(1)(B) against the pension plan itself as an entity and any fiduciaries who control the administration of the pension plan." *Id.* at 475 (citing *Gluth v. Wal–Mart Stores, Inc.*, No. 96–1307, 1997 WL 368625, at *6 (4th Cir. July 3, 1997)). With respect to a claim pursuant to subsection 502(a)(2), however, such a claim may only be brought against plan fiduciaries. *See, e.g., Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Va.*, 867 F.Supp. 398, 404 n. 9 (E.D.Va.1994).

Therefore, the controlling question before the Court is whether Tyco International and/or Tyco Electronics are plan fiduciaries. ERISA section 402, 29 U.S.C. § 1102, provides that "[e]very employee benefit plan ... shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). "If a plan designates a person or entity a 'named fiduciary,' then such person or entity is presumptively a fiduciary and subject to liability under ERISA." *McRae*, 301 F.Supp.2d at 475 (some internal quotation marks omitted) (quoting *Rayburn v. Health Care Plan of Carolina Sales, Inc.*, No. 1:00CV00458, 2000 WL 1456290, at *2 (M.D.N.C. Sept.1, 2000)). Even if the plan does not name an entity as a fiduciary, that entity "may still qualify as a fiduciary under ERISA ... because ERISA extends the scope of the term fiduciary to any person or entity who actually exercises discretionary authority, control, or responsibility over the plan." *Id.* at 475–76 (citing *Rayburn*, 2000 WL 1456290, at *2; 29 U.S.C. § 1002(21)(A)[7]

). The Court notes that a person or entity is considered to be a fiduciary under ERISA "only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration ...." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 1789 135 L.Ed.2d 153 (1996) (internal quotations omitted). Furthermore, "a party is a fiduciary only as to the activities which bring the person within the definition." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992).

(b) Subsection 502(a)(3)

With respect to a claim pursuant to subsection 502(a)(3), however, the Supreme Court held in *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), that such claims are not limited to fiduciaries. The Supreme Court noted that subsection 502(a)(3) "admits of no limit (aside from the 'appropriate equitable relief' caveat, ...) on the universe of possible defendants. Indeed § 502(a)(3) makes no mention at all of which parties may be proper defendants— the focus, instead, is on redressing the 'act or practice which violates any provision of [ERISA Title I].' " *Id.* at 246, 120 S.Ct. at 2187 (second alteration in original) (quoting 29 U.S.C. § 1132(a)(3) (emphasis omitted)). As the district court explained in *Daniels v. Bursey*, 313 F.Supp.2d 790 (N.D.Ill.2004), under *Harris Trust*, " § 502(a)(3) ... liability ... hinges on whether [the defendant] knowingly participated in a fiduciary's breach of a substantive provision of ERISA." *Daniels*, 313 F.Supp.2d at 808.

(c) Summary of the Legal Standards Governing Who Is a Proper Party Under Subsections 502(a)(1)(B), 502(a)(2), and 502(a)(3)

In summary, therefore, with respect to claims brought pursuant to ERISA subsec-

---

7. 29 U.S.C. § 1002(21)(A) provides in pertinent part the following:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

tion 502(a)(1)(B), the only proper defendant is the plan, the plan administrator, or a fiduciary. With respect to subsection 502(a)(2), the only proper defendant is a fiduciary. With respect to subsection 502(a)(3), however, anyone can be a defendant, so long as the person or entity was a fiduciary or "knowingly participated in a fiduciary's breach of a substantive provision of ERISA." In light of these standards, the Court will determine whether Plaintiff may assert his second claim (RSIP or 401(k) plan claim) against Tyco International or his sixth claim (TEPP or pension plan claim) against Tyco Electronics. In making this determination, the Court is cognizant that, because Plaintiff is pro se, the Court must liberally construe Plaintiff's Complaint and hold it to a less stringent standard than a complaint drafted by a licensed attorney. *McRae*, 301 F.Supp.2d at 476 (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (per curiam)); *see also De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir.2003). The Fourth Circuit Court of Appeals has noted, however, that "principles requiring generous construction of *pro se* complaints are not ... without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also Holsey v. Collins*, 90 F.R.D. 122, 128 (D.Md.1981) ("Even pro se litigants ... must meet certain minimal standards of pleading." (alteration in original) (internal quotations omitted)).

### (2) Whether Tyco International Is a Proper Party with Respect to Plaintiff's Second (RSIP) Claim

■ With respect to Plaintiff's second (RSIP) claim against Tyco International, Plaintiff appears to bring this claim pursuant to ERISA subsections 502(a)(1)(B), 502(a)(2), and/or 502(a)(3). In support of his claim against Tyco International, Plaintiff alleges that Tyco International notified RSIP participants about the blackout period that occurred from January through March 2000. (Compl. ¶¶ 23–24.) Plaintiff further alleges that Tyco International "failed to comply with its agreement [that the RSIP remain fully invested] and [its] contractual and fiduciary responsibility ...." (Compl. ¶ 25.) Tyco International responds, however, that

"Plaintiff has not alleged, nor can he allege, that International had fiduciary responsibility over the management of the RSIP." (Tyco Int'l's Br. Supp. 12(b)(6) Mot. at 18.) Especially in light of Plaintiff's pro se status, the Court finds, however, that it is possible that Plaintiff could prove a "set of facts ... consistent with the allegations" of his Complaint that Tyco International had fiduciary responsibility over the plan.

Tyco International further contends, however, that the RSIP's Plan Summary does not mention Tyco International and therefore demonstrates as a matter of law that Tyco International had no involvement whatsoever with the RSIP. The Court notes that, because the RSIP is referred to in Plaintiff's Complaint and is integral to Plaintiff's claim, the Court may look to the Plan Summary without converting Tyco International's Motion to Dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment pursuant to Rule 56. *See McRae*, 301 F.Supp.2d at 476 n. 2 (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)). However, because the Plan Summary does not limit who could potentially be a fiduciary, the Court finds that the Plan Summary does not control the disposition of this issue on a Rule 12(b)(6) Motion. *See id.* at 475–76.

At this stage of the proceedings, therefore, the Court cannot hold, as a matter of law, that Tyco International is not a fiduciary with respect to the RSIP. Accordingly, Plaintiff has sufficiently alleged that Tyco International is a proper party with respect to Plaintiff's second claim (RSIP or 401(k) plan claim) under ERISA subsections 502(a)(1)(B), 502(a)(2), and 502(a)(3).

### (3) Whether Tyco Electronics Is a Proper Party with Respect to Plaintiff's Sixth (TEPP or Pension Plan) Claim

■ With respect to Plaintiff's sixth claim (TEPP or pension plan claim), Plaintiff alleges that Tyco Electronics "discontinu[ed] and terminat[ed] the pension plan" and denied Plaintiff a lump sum settlement. (Compl. ¶¶ 47, 49.) As such, Plaintiff brings this claim pursuant to ERISA subsection

502(a)(1)(B) "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan ...." Tyco Electronics responds that because Tyco Electronics is not the plan or the plan administrator, Plaintiff may not assert a section 502(a)(1)(B) claim against it. (Tyco Elecs.' Br. Supp. Mot. Dismiss at 9–10.) However, as discussed before, liability under subsection 502(a)(1)(B) is not limited to just the plan or the plan administrator, but extends "to any person or entity who actually exercises discretionary authority, control, or responsibility over the plan," that is, anyone who is a fiduciary. *McRae*, 301 F.Supp.2d at 475–76. Based upon Plaintiff's allegations, the Court simply cannot hold, as a matter of law, that Tyco Electronics is not a fiduciary with respect to the TEPP.

> (4) Conclusion with Respect to Whether Tyco International and Tyco Electronics Are Proper Parties with Respect to Plaintiff's ERISA Claims

In conclusion, therefore, the Court finds, in the context of the liberal pleading standards of Rule 8, that Plaintiff's Complaint contains sufficient allegations that Tyco International and Tyco Electronics are fiduciaries with respect to the RSIP and the TEPP, respectively, and are therefore proper defendants with respect to Plaintiff's second (401(k) plan) and sixth (pension plan) claims. The Court notes that, as this lawsuit progresses, Tyco International and Tyco Electronics may very well prevail in their view that Tyco U.S. and the Retirement Committee are actually the proper defendants for Plaintiff's ERISA claims. Consistent with the notice pleading standards of Rule 8, however, the Court finds that Plaintiff has sufficiently alleged that Tyco International and Tyco Electronics are proper defendants. The Court will therefore analyze whether either or both of Plaintiff's ERISA claims should be dismissed for substantive reasons, beginning with Defendants' contention that Plaintiff has failed to exhaust his administrative remedies.

> c. Administrative Exhaustion Under ERISA

■ In the present case, Tyco International and Tyco Electronics contend that Plaintiff failed to properly exhaust his administrative remedies with respect to the RSIP and the TEPP, respectively, and therefore Plaintiff's second (401(k) plan) and sixth (pension plan) claims must be dismissed. The Court notes that although ERISA does not explicitly require beneficiaries to exhaust their administrative remedies prior to filing a lawsuit for benefits, the Fourth Circuit Court of Appeals has held that "an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132 [ERISA subsection 502]." *Makar v. Health Care Corp. of the Mid–Atlantic*, 872 F.2d 80, 82 (4th Cir.1989); *accord McRae*, 301 F.Supp.2d at 477 (citing *Makar*). The court of appeals noted that "[t]his exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Makar*, 872 F.2d at 82 (citing *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243–45 (7th Cir.1983)).

To promote administrative, rather than judicial, remedies, "ERISA requires benefit plans covered by the Act to provide internal dispute resolution procedures for participants whose claims for benefits have been denied." *Id.* at 83 (citing 29 U.S.C. § 1133). Therefore, "[e]mployee benefit plans must provide adequate, written notice of the specific reasons for such a denial and must afford participants a reasonable opportunity for a 'full and fair review' of the decision denying the claim." *Id.* (citing 29 U.S.C. § 1133). In other words, a beneficiary must be provided "meaningful access to [the plan's] administrative review procedures." *Suntrust Bank v. Aetna Life Ins. Co.*, 251 F.Supp.2d 1282, 1289 (E.D.Va.2003). As the district court noted in *Suntrust Bank*, in order to provide "meaningful access" to administrative procedures, the Department of Labor regulations require the administrator, if it denies a claim, to provide the claimant a written or electronic notification setting forth the following:

> (i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . . .

29 C.F.R. § 2560.503–1(g)(1); *see Suntrust Bank,* 251 F. Supp 2d at 1289. In light of the relevant legal standards, the Court will discuss whether Plaintiff's second claim (RSIP claim) against Tyco International or his sixth claim (TEPP claim) against Tyco Electronics must be dismissed for failure to exhaust his administrative remedies.

### (1) Administrative Exhaustion: Plaintiff's Second (RSIP) Claim Against Tyco International

In its Reply Brief in Support of Its Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) [Document # 30], Tyco International for the first time contends that because Plaintiff has failed to exhaust his administrative remedies, Plaintiff's second claim (401(k) plan claim) against Tyco International must fail. As an initial matter, the Court notes that while Tyco Electronics (as discussed more fully below) did raise this issue in its Brief in Support of Motion to Dismiss Plaintiff's sixth claim (pension plan claim), Tyco International did not raise the administrative exhaustion issue with respect to Plaintiff's second claim until it filed its Reply Brief. Tyco International has apparently now raised this issue for the first time to address the following statements Plaintiff made in his Response Brief to Tyco International:

Plaintiff has exhausted his plan remedies in that Plaintiff contacted the Tyco Retirement Savings and Investment Plan sometime after the end of the first quarter of 2000 subsequent to Plaintiff receiving his first quarter 2000 RSIP statement . . . .

Plaintiff described the discrepancy he calculated in his quarterly statement that resulted from the transition process to a Tyco Retirement Savings and Investment Plan representative who informed Plaintiff that the transition process was properly executed and Plaintiff had no further recourse since Plaintiff's RSIP statement was accurate. No additional information or statement was ever provided to Plaintiff regarding the reason for denial of Plaintiff's claim or the necessity or availability of any appeals process, if one existed relative to this issue.

(Pl.'s Br. Supp. Resp. Tyco Int'l's 12(b)(6) Mot. [Doc. # 27] at 11.) According to Tyco International, therefore, "[i]f Plaintiff did not care enough to determine whether an appeal was even available, he necessarily admits that he did not exhaust his administrative remedies, which, as Defendants have previously briefed, is required under ERISA." (Tyco Int'l's Reply Br. Supp. 12(b)(6) Mot. [Doc. # 29] at 3.)

In the present case, Plaintiff appears to bring his second claim (401(k) plan claim) against Tyco International pursuant to ERISA subsections 502(a)(1)(B), 502(a)(2), and/or 502(a)(3). The Court will therefore discuss Plaintiff's administrative exhaustion requirements pursuant to subsections 502(a)(1)(B) and 502(a)(3). However, the Court need not discuss administrative exhaustion with respect to subsection 502(a)(2) because, as discussed more fully below, Plaintiff has not alleged a proper subsection 502(a)(2) claim.

The Court notes that with respect to a claim for breach of fiduciary duty brought pursuant to subsection 502(a)(3), a plaintiff must only exhaust his administrative remedies "where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits . . . ." *Smith v. Sydnor,* 184 F.3d 356, 362 (4th Cir.1999); *accord Suntrust Bank,* 251 F.Supp.2d at 1288 (citing *Smith*). However, where the basis of the claim is not based on a denial of benefits or closely related to a claim for benefits, administrative exhaustion is not required. *See Smith,* 184 F.3d at 362. In this case, it is

unclear at this stage of the proceedings whether Plaintiff's claim is a true breach-of-fiduciary-duty claim under subsection 502(a)(3) or is in actuality a claim for benefits under subsection 502(a)(1)(B) or a subsection 502(a)(3) claim that is closely related to a denial of benefits. To the extent that Plaintiff's claim is a true-breach-of-fiduciary-duty claim pursuant to subsection 502(a)(3), administrative exhaustion is not required. However, to the extent that Plaintiff's claim is actually brought pursuant to subsection 502(a)(1)(B) or is a subsection 502(a)(3) claim closely related to a denial of benefits, Plaintiff would generally be required to exhaust his administrative remedies.

■ In the present case, however, it would seem that an exception to the general rule requiring administrative exhaustion would apply because it appears that Tyco International has failed to comply with the notice provisions of 29 C.F.R. § 2560.503–1(g)(1). Taking Plaintiff's statements from his Response Brief as true, it appears that not only did Plaintiff not receive a letter complying with 29 C.F.R. § 2560.503–1(g)(1), he did not receive a letter at all. Thus, because it appears at this stage of the proceedings that Tyco International failed to comply with the notice provisions of 29 C.F.R. § 2560.503–1(g)(1), the Court finds it unwarranted at this time to dismiss Plaintiff's second claim against Tyco International for failure to exhaust his administrative remedies.

> (2) Administrative Exhaustion: Plaintiff's Second (TEPP or Pension Plan) Claim Against Tyco Electronics

■ With respect to Plaintiff's sixth claim, Tyco Electronics also contends that Plaintiff has failed to exhaust his administrative remedies and therefore his claim for a lump sum benefit from the TEPP must be dismissed. Plaintiff contends that he has properly alleged in paragraph 49 of his Complaint that he exhausted his administrative remedies. Plaintiff's Complaint states that "Plaintiff's lump sum settlement request was denied by defendants in a letter [(hereinafter the "Smith Letter")] dated December 9, 1999

from Mark A. Smith, Manager, Employee Benefits Compliance." (Compl.¶ 49.) In his brief, Plaintiff contends that although he received this letter on December 16, 1999, "[n]o information or statement was ever provided to [him] regarding the necessity or availability of any appeals process, if one existed relative to this issue." (Pl.'s Br. Supp. Resp. Tyco Elec. Corp.'s Mot. Dismiss [Doc. # 23] at 17.)

Viewing Plaintiff's allegations in the light most favorable to Plaintiff, Plaintiff at least attempted to take advantage of the TEPP's internal dispute resolution procedures. In this case, even assuming that Tyco Electronics complied with subsections (i)-(iii) of 29 C.F.R. § 2560.503–1(g)(1), the Court finds that, based on the information before the Court at this time, Tyco Electronics did not comply with subsection (iv), which requires the beneficiary to be provided "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . ." The Smith Letter does not describe the plan's review procedures or the time limits applicable to those procedures, and it clearly does not inform Plaintiff that he had the right to bring a civil action pursuant to· section 502. In fact, the Smith Letter did not even inform Plaintiff that he could contact Mr. Smith with any questions. *See Suntrust Bank*, 251 F.Supp.2d at 1290 (holding that the defendants "cannot reasonably suggest that the provision of the claim examiner's phone number to answer any further questions [the plaintiff] may have is equivalent to an explanation of the Plan's claim review procedures"). Therefore, at this stage of the proceedings, the Court holds that, to the extent that Plaintiff may not have complied with the TEPP's claim review procedures, Plaintiff is excused from complying with these procedures because Tyco Electronics itself failed to comply with the notice requirements of 29 C.F.R. § 2560.503–1(g)(1)(iv). Thus, Plaintiff's sixth claim (pension plan claim) against Tyco Electronics is not subject to dismissal for failure to comply with ERISA's administrative exhaustion requirements.

For the reasons stated above, the Court finds it unwarranted to dismiss either Plaintiff's second (RSIP) claim or sixth (TEPP) claim against Tyco International and Tyco Electronics, respectively, due to his alleged failure to exhaust his administrative remedies. Therefore, the Court will now discuss the merits of Plaintiff's second and sixth claims.

### d. Plaintiff's Second Claim: RSIP Claim Against Tyco International

The crux of Plaintiff's allegations against Tyco International with respect to the RSIP is that Tyco International breached its fiduciary duty to Plaintiff by failing to keep Plaintiff's account "fully invested during the blackout period" that Tyco International allegedly imposed during the transition period from Vanguard to Fidelity. (Compl.¶¶ 24–25.) In its Brief in Support of Its Motion to Dismiss, Tyco International construes Plaintiff's claims as being brought pursuant to either ERISA subsections 502(a)(2) or 502(a)(3). The Court will therefore first address any relief available to Plaintiff under these subsections.

#### (1) Application of ERISA Subsection 502(a)(2) to Plaintiff's Second (401(k) Plan) Claim Against Tyco International

ERISA subsection 502(a)(2) states that "[a] civil action may be brought ... by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [29 U.S.C. § 1109]." However, a beneficiary may not bring such a claim on his own behalf but must bring it on behalf of the plan. *See Griggs v. E.I. DuPont de Nemours & Co.,* 237 F.3d 371, 385 n. 7 (4th Cir.2001) (citing *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985)) (holding that § 502(a)(2) "does not provide remedies for individual ERISA beneficiaries"); *see also Varity Corp. v. Howe,* 516 U.S. 489, 508–09, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996) (reiterating *Russell's* holding that the only relief permitted under § 502(a)(2) is for the plan itself). Thus, "[t]he Supreme Court in *Russell* clearly held that any recovery under subsection 502(a)(2)

must be for the plan as a whole rather than for individual beneficiaries." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.,* 102 F.3d 712, 714 (4th Cir.1996) (citing *Russell*). In this case, Plaintiff does not bring his breach of fiduciary duty claim to obtain equitable relief for the benefit of the RSIP but instead seeks individual relief, apparently either legal damages or equitable relief. Thus, Plaintiff seeks relief that is not permitted under subsection 502(a)(2). *Cf. Conley v. Pitney Bowes,* 176 F.3d 1044 (8th Cir.1999) (holding that a plaintiff seeking restoration of his long-term disability benefits could not prevail under subsection 502(a)(2) where the plaintiff failed either to "show[ ] how reform of the claim procedure or removal of the fiduciaries will remedy the harms he has allegedly suffered" or "produce[ ] evidence of a pattern or practice of fiduciary violations that require reform"); *see also Glencoe v. Teachers Ins. & Annuity Ass'n of Am.,* No. 99–2417, 2000 WL 1578478, at *1 (4th Cir. Oct.19, 2000) (per curiam) (citing *Russell*) (holding that the plaintiff could not bring a claim under subsection 502(a)(2) because she was "clearly seeking personal damages, rather than damages on behalf of the plan itself"). Thus, to the extent that Plaintiff's second claim seeks relief pursuant to ERISA subsection 502(a)(2), this claim is dismissed with prejudice.

#### (2) Application of ERISA Subsection 502(a)(3) to Plaintiff's Second (401(k) Plan) Claim Against Tyco International

ERISA subsection 502(a)(3) states that "[a] civil action may be brought by ... a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan ...." 29 U.S.C. § 1132(a)(3) (emphasis added). Tyco International contends that Plaintiff has requested remedies beyond the "other appropriate equitable relief" authorized by ERISA. In *Griggs v. E.I. DuPont de Nemours & Co.,* the court of appeals held that "[t]he phrase 'appropriate equitable relief' encompasses

'those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).'" 237 F.3d at 384 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 2068–69, 124 L.Ed.2d 161 (1993)). The court of appeals further held that appropriate equitable relief also includes "reinstatement to the status quo." *Id.* However, the extracontractual compensatory and punitive damages Plaintiff seeks are not permitted under ERISA subsection 502(a)(3). *Glencoe*, 2000 WL 1578478, at *2 (citing *Mertens*). Thus, to the extent that Plaintiff's second (401(k) plan) claim actually seeks extracontractual compensatory and punitive damages, Plaintiff's claim is dismissed with prejudice. However, to the extent that Plaintiff does indeed seek appropriate equitable relief pursuant to subsection 502(a)(3), Plaintiff's second claim withstands Tyco International's Motion to Dismiss.

#### (3) Application of ERISA Subsection 502(a)(1)(B) to Plaintiff's Second (401(k) Plan) Claim Against Tyco International

The Court further notes that although Tyco International responded to Plaintiff's second claim by characterizing it as a breach-of-fiduciary-duty claim under either ERISA subsection 502(a)(2) or 502(a)(3), neither Plaintiff's nor Tyco International's briefs have addressed whether Plaintiff's second claim is actually a claim pursuant to subsection 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." As the Fourth Circuit Court of Appeals held in *Smith v. Sydnor*, "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*." 184 F.3d at 362.

The confusion on this issue is likely related to Plaintiff's pro se status and the vagueness of Plaintiff's allegation that his "RSIP account did not remain fully invested during the blackout period." (Compl. ¶ 25.) Thus, although Plaintiff's second claim withstands Tyco International's Motion to Dismiss, the Court notes that additional factual development will likely clear up whether Plaintiff's claim is a subsection 502(a)(1)(B) claim or a subsection 502(a)(3) claim. The distinction is not merely academic. If Plaintiff has adequate relief under subsection 502(a)(1)(B), he will not be permitted to also maintain an action pursuant to subsection 502(a)(3). *Wertheim v. Hartford Life Ins. Co.*, 268 F.Supp.2d 643, 658 n. 23 (E.D.Va.2003) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Edmonds v. Hughes Aircraft Co.*, No. 97–1431, 1998 WL 228200, at *10 (4th Cir. May 8, 1998)). And even if Plaintiff's claim is properly brought pursuant to subsection 502(a)(3), if the basis of that claim is the denial of benefits or is closely related to a denial of benefits, ERISA's administrative exhaustion requirements may ultimately apply to bar that claim.[8] However, at this stage of the proceedings, it is not appropriate for the Court to decide which subsection of ERISA will ultimately govern Plaintiff's second claim. *Cf. Sentara Va. Beach Gen. Hosp. v. LeBeau*, 182 F.Supp.2d 518, 525 (E.D.Va.2002) (refusing to dismiss the plaintiff's claim pursuant to subsection 502(a)(3) but acknowledging that ultimately the plaintiff's exclusive remedy might be pursuant to subsection 502(a)(1)). In summary, therefore, Tyco International's Motion to Dismiss Plaintiff's second claim pursuant to Rule 12(b)(6) is denied.

#### e. Plaintiff's Sixth Claim: TEPP Claim Against Tyco Electronics

In Plaintiff's sixth claim (TEPP or 401(k) plan claim), Plaintiff requests a lump sum payment from the Tyco Electronics Pension Plan. Although Plaintiff brought this claim as a state-law contract claim, there is no dispute that it is properly construed as a claim pur-

---

8. Although the Court has held that Plaintiff's second claim survives Tyco International's Rule 12(b)(6) Motion to Dismiss because Plaintiff has sufficiently alleged that he exhausted his administrative remedies, at the summary judgment stage, Tyco International may be able to demonstrate, as a matter of law, that Plaintiff did in fact fail to exhaust his administrative remedies.

suant to ERISA subsection 502(a)(1)(B). Subsection 502(a)(1)(B) provides a beneficiary a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...." Tyco Electronics challenges Plaintiff's sixth claim under two additional theories: (1) Plaintiff's claim is barred by the statute of limitations and (2) Plaintiff is not entitled to a lump sum payment under the terms of the Plan. The Court will address Tyco Electronics' contentions in turn.

### (1) Statute of Limitations as a Bar to Plaintiff's TEPP Claim

■ Tyco Electronics contends that Plaintiff's sixth claim (TEPP or 401(k) plan claim) must be dismissed because it is barred by the statute of limitations. As an initial matter, the Court notes that "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 985 (D.Md.2002), *aff'd per curiam*, 92 Fed.Appx. 933 (4th Cir.2004); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 348–54 (2d ed.1990). Notably, ERISA does not articulate an explicit limitations period in which a plaintiff may bring a claim, except in an action for breach of fiduciary duty. *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992). Therefore, the Court must look to state law and apply the most analogous limitation provision to determine the applicable statute of limitations. *Id.* The Fourth Circuit Court of Appeals has noted that ERISA claims not involving a breach of fiduciary duty are analogous to claims for either negligence or breach of contract. *Id.* Accordingly, the Court will apply the three-year statute of limitations for ordinary civil actions under North Carolina law. N.C. Gen.Stat. § 1–52; *Harrold v. Dowd*, 149 N.C.App. 777, 781, 561 S.E.2d 914, 917 (2002).

■ Plaintiff filed his lawsuit on September 30, 2002, and neither Plaintiff nor Tyco Electronics disputes that a three-year statute of limitations applies to Plaintiff's sixth claim. What the parties do dispute, however, is when the statute of limitations began to run. Tyco Electronics contends that the denial of the lump sum benefit occurred sometime before September 30, 1999. Plaintiff contends, however, that the statute of limitations did not begin to run until December 16, 1999, the date Plaintiff received the letter from Mark A. Smith. The Fourth Circuit Court of Appeals has held that the statute of limitations does not begin to run until there has been a formal and final denial of a benefits claim. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 73 n. 1 (4th Cir.1989) (finding that the statute of limitations began to run when the plaintiff's appeal was formally denied); *Lippard v. Unumprovident Corp.*, 261 F.Supp.2d 368, 378 (M.D.N.C.2003) (citing *Rodriguez*) (same). As discussed above, this Court has found that (based on the record properly before the Court at this stage of the proceedings) Plaintiff has sufficiently alleged that he exhausted his administrative remedies when his request for a lump sum payment was denied by the Smith Letter, which Plaintiff alleges he received on December 16, 1999. Therefore, based upon the allegations of Plaintiff's Complaint, Plaintiff had three years from December 16, 1999, in which to bring his claim for benefits. Accordingly, by bringing his suit on September 30, 2002, Plaintiff has complied with the applicable statute of limitations. Consequently, the Court finds that Plaintiff's sixth claim is not subject to dismissal as being barred by the statute of limitations.

### (2) Plaintiff's Entitlement to a Lump Sum Distribution Under the TEPP

■ Tyco Electronics finally contends that the TEPP does not entitle Plaintiff to a lump sum distribution. Plaintiff contends, however, that other employees received lump sum distributions and "[t]he terms of the pension plan do not exclude a lump sum settlement in that lump sum settlements have been made provided [sic] to employees in the past." (Pl.'s Br. Supp. Resp. Tyco Elecs. Corp.'s Mot. Dismiss at 17.) Plaintiff thus alleges that by terminating the TEPP,

Tyco Electronics "created a contract nova-tion providing plaintiff with the legal right to renegotiate said pension plan contract." (Compl.¶ 47.) However, according to Defendants, "Plaintiff has not alleged, nor can he allege, that the AMP Pension Plan or the TEPP contain [sic] provisions that provide him the right to a lump-sum distribution." (Tyco Elecs.' Br. Supp. Mot. Dismiss at 11.)

As an initial matter, the Court notes that ERISA does not entitle Plaintiff to a lump sum distribution unless the pension plan provides such an option. *See Eagar v. Savannah Foods & Indus., Inc.,* 605 F.Supp. 415, 417–18 (N.D.Ala.1984) (citing *Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983)) (denying the plaintiffs a lump sum payment where the terms of the plan did not provide for one). Furthermore, as discussed above, to the extent that Plaintiff's sixth claim seeks relief pursuant to North Carolina contract law, Plaintiff's claim is preempted by ERISA. The core question, therefore, is whether Plaintiff has sufficiently alleged that he is entitled to a lump sum payout from the TEPP. *See Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 60 (4th Cir.1992) (holding that "one of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written" (alteration, internal quotations, and emphasis omitted)). While Plaintiff's sixth claim is speculative at best, the Court notes that, because Plaintiff is pro se, the Court must liberally construe Plaintiff's Complaint and hold it to a less stringent standard than a complaint drafted by a licensed attorney. The Court further notes that the cases cited by Tyco Electronics in support of dismissal were all decided at the summary judgment stage, not the motion to dismiss stage. *See Coleman,* 969 F.2d at 62–63; *White v. Provident Life & Accident Ins. Co.,* 114 F.3d 26, 27 (4th Cir.1997); *Health-South Rehab. Hosp. v. Am. Nat'l Red Cross,* 101 F.3d 1005, 1006 (4th Cir.1996). In addition, although Tyco Electronics has provided a copy of the Plan Summary and excerpts from the Plan, the Court cannot conclude, based solely upon these documents and the arguments in Tyco Electronics' brief, that Plaintiff was not entitled to a lump sum payment. In fact, the Court notes that the Smith Letter proffered by Plaintiff appears to describe three separate bases for providing a lump sum payment, but neither the Plan Summary nor the Plan appears to discuss these bases. It is thus unclear to the Court whether Tyco Electronics has even provided the version of the TEPP plan documents that would apply to Plaintiff. Therefore, at this stage of the proceedings, the Court cannot conclude, as a matter of law, that Plaintiff is not entitled to the relief he seeks. The Court can only hold, at this stage of the proceedings, that Plaintiff has sufficiently alleged that he can obtain a lump sum payment.

### f. Right to a Jury Trial Under ERISA

■ Plaintiff seeks a jury trial for his ERISA claims. In requesting a jury trial, Plaintiff relies on the case of *Hulcher v. United Behavioral Systems, Inc.,* 919 F.Supp. 879 (E.D.Va.1995), in which the district court held that the plaintiff was entitled to a trial by jury for his subsection 502(a)(1)(B) claim. This Court, however, based upon well-reasoned opinions within the district courts of the Fourth Circuit, has previously held that it will not follow *Hulcher. See Lawrence v. Continental Cas. Co.,* No. 1:97CV00980, 1998 U.S. Dist. LEXIS 15108, at *12 (M.D.N.C. June 10, 1998). This Court held in *Lawrence* that it "is of the opinion that it is still good law in the Fourth Circuit that ERISA actions are equitable in nature and are for the Court to decide rather than the jury." *Id.* The Court has reviewed the post-*Lawrence* case law and has located no case within the Fourth Circuit holding that a plaintiff in an ERISA action is entitled to a trial by jury. Thus, to the extent that Plaintiff requests a jury trial for his claims under ERISA, his request is denied.

### g. Conclusion with Respect to Plaintiff's Second (RSIP or 401(k) Plan) and Sixth (TEPP or Pension Plan) Claims

In summary, therefore, Tyco International's and Tyco Electronics' Motions to Dismiss pursuant to Rule 12(b)(6) with respect to Plaintiff's second and sixth claims, respectively, are denied in part and granted in part.

To the extent that Defendants request the Court to dismiss Plaintiff's demand for extra-contractual compensatory or punitive damages, his request for a jury trial, and his demand for relief pursuant to ERISA subsection 502(a)(2), Defendants' Motions to Dismiss Plaintiff's second and sixth claims are granted on these limited bases. In all other respects, however, Defendants' Motions to Dismiss Plaintiff's second and sixth claims are denied. As such, the Court finds that Plaintiff has sufficiently alleged a claim against Tyco International pursuant to either ERISA subsection 502(a)(1)(B) or 502(a)(3) and a claim against Tyco Electronics pursuant to ERISA subsection 502(a)(1)(B). Therefore, if Plaintiff can satisfy his ultimate burden to demonstrate facts consistent with these allegations that would demonstrate by a preponderance of the evidence that Defendants violated ERISA, he will be entitled to whatever relief ERISA may provide with respect to these claims.

### 2. Plaintiff's Eighth Claim: Securities Fraud Claim Against Tyco International

In Plaintiff's eighth claim, Plaintiff brings a securities fraud claim against Tyco International pursuant to Securities Exchange Act section 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. Section 10(b) states that "[i]t shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Pursuant to its authority under section 10(b), the Securities and Exchange Commission promulgated Rule 10b–5, which states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

As the Fourth Circuit Court of Appeals recently reaffirmed in *Ottmann v. Hanger Orthopedic Group, Inc.,* 353 F.3d 338 (4th Cir.2003), a plaintiff must properly allege the following elements to state a claim under section 10(b) and Rule 10b–5:

(1) the defendant made a false statement or omission of material fact

(2) with scienter

(3) upon which the plaintiff justifiably relied

(4) that proximately caused the plaintiff's damages.

*Id.* at 342 (quoting *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 613 (4th Cir.1999)) (internal quotation marks omitted). When, as in the present case, the plaintiff utilizes the "fraud on the market" theory, the plaintiff is not required to prove individual reliance. *Dunn v. Borta,* 369 F.3d 421, 430 (4th Cir.2004) (citing *Longman v. Food Lion, Inc.,* 197 F.3d 675, 682 n. 1 (4th Cir.1999)). Instead, the plaintiff may show indirect reliance on the statement or omission by showing that he relied on the integrity of the marketplace. *Id.* (citing *Longman,* 197 F.3d at 682 n. 1).

In the present case, Tyco International contends that Plaintiff has failed to plead elements one, two, and four with the particularity required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, which enhanced the pleading requirements for stating a claim pursuant to the Securities Exchange Act section 10(b) and Rule 10b–5. Plaintiff's failure to allege with particularity any one of the four elements required to state claims under section 10(b) and Rule 10b–5 will mandate dismissal

of Plaintiff's claim. The Court will therefore address whether Plaintiff's Complaint contains sufficient allegations that Tyco International committed securities fraud.

### a. Element One: Material Misrepresentation or Omission

■ To properly allege a false statement or omission of material fact under the PSLRA, "a plaintiff 'must point to a *factual* statement or omission—that is, one that is demonstrable as being true or false.'" *Ottmann,* 353 F.3d at 342–43 (quoting *Longman,* 197 F.3d at 682). When pointing to a factual statement, the plaintiff must allege that the statement is false, but when pointing to an omission, the plaintiff must allege "that the omitted fact renders a public statement misleading." *Id.* at 343. In addition, to be actionable, the "'statement or omission of fact must be material,' i.e., there must be 'a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact.'" *Id.* (quoting *Longman,* 197 F.3d at 682–83) (emphasis omitted). In addition, when the plaintiff brings his claim under the fraud-on-the-market theory, "the 'reasonable investor' for materiality purposes is not an individual plaintiff, but the market itself . . . ." *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 617 (4th Cir.1999); *accord Dunn v. Borta,* 369 F.3d 421, 430 (4th Cir.2004). In making these allegations, the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

In Plaintiff's Complaint, Plaintiff makes vague allegations that "[o]fficers and controlling persons of defendant Tyco [International] . . . [made] misrepresentations and omissions . . . ." (Compl.¶ 58.) Thus, Plaintiff alleges that these "[o]fficers and controlling persons . . . [violated their] duty to disseminate promptly, [sic] accurate and truthful information with respect to [Tyco International's] financial condition and performance, growth, operations, financial statements, business, markets, management, management compensation, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue . . . ." (*Id.*) These allegations fall far short of the pleading requirements for element one because Plaintiff has failed to specify any false or misleading statements or omissions. Therefore, Plaintiff has failed to properly plead that Tyco International "made a false statement or omission of material fact . . . ." *Ottmann,* 353 F.3d at 342 (internal quotations omitted).

### b. Element Two: Scienter

■ Tyco International further contends that Plaintiff has also failed to plead scienter with the particularity required by the PSLRA. As the court in *Ottmann* reaffirmed, a plaintiff may meet the scienter requirement by pleading either intentional or reckless conduct. *Ottmann,* 353 F.3d at 344. However, reckless conduct must be "severe," that is, it must be "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 343, 344 (internal quotations omitted). In pleading scienter, the court of appeals in *Ottmann* recently held, in a matter of first impression for this circuit, that plaintiffs must "plead facts that together establish a strong inference of scienter." *Id.* at 345.

In the present case, Plaintiff has failed to allege "facts that together establish a strong inference of scienter." Instead, Plaintiff merely states that (1) Tyco International "carried out a plan, scheme and course of conduct which was intended to deceive the investing public," (2) Tyco International's corporate officers committed "egregious conduct," and (3) the SEC "charged [these] officers . . . with fraud, manipulating Tyco's stock price, enterprise corruption, along with other charges." (Compl.¶¶ 62–64.) These

vague allegations are insufficient to meet the high bar established by the PSLRA. The Court therefore finds that Plaintiff has failed to plead scienter with the requisite particularity.

### c. Element Four: Causation

Tyco International further contends that Plaintiff has failed to plead that his losses were directly caused by Tyco International's allegedly fraudulent activity. The Court notes that "[i]n a suit brought pursuant to Rule 10b–5, a plaintiff must show loss causation: that the misrepresentations and omissions caused economic harm." *Keeney v. Larkin*, 306 F.Supp.2d 522, 541 (D.Md.2003) (internal quotation marks omitted) (quoting *Arnlund v. Smith*, 210 F.Supp.2d 755, 768 (E.D.Va.2002) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 360 (4th Cir.1996))). The Fourth Circuit Court of Appeals has recently noted, however, that "establishing loss sufficient to prove liability ('loss causation') does not require a plaintiff to prove that the defendant's fraud was the *sole* cause of the plaintiff's loss." *Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir.2004) (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 186–87 (3d Cir.2000)). In *Semerenko v. Cendant Corp.*, the Third Circuit Court of Appeals found that the plaintiff had adequately pled loss causation by alleging that the defendant's misrepresentations "directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff . . . ." 223 F.3d 165, 186 (3d Cir. 2000) (internal quotations omitted). The court in *Semerenko* further observed that "[s]o long as the alleged misrepresentations were a substantial cause of the inflation in the price of a security and in its subsequent decline in value, other contributing forces will not bar recovery." *Id.* at 186–87.

In the present case, Plaintiff fails to show causation because, as previously noted, Plaintiff has failed to properly allege that any material misstatements or omissions occurred. Therefore, Plaintiff has failed to satisfy element four of his securities fraud claim.

### d. Conclusion with Respect to Plaintiff's Securities Fraud Claim

For the foregoing reasons, the Court finds that Plaintiff's securities fraud claim fails to meet the enhanced pleading requirements of the PSLRA. Therefore, the Court is required by 15 U.S.C. § 78u–4(b)(3)(A) to dismiss Plaintiff's securities fraud claim. However, as discussed more fully in Section VI below, the Court will, in its discretion, dismiss Plaintiff's securities fraud claim with leave to amend.

**3. Plaintiff's Third Claim: Tyco International's Failure to Include Plaintiff's Shareholder Proposal in Its Proxy Materials**

█ In Plaintiff's third claim, Plaintiff alleges that Tyco International violated SEC Rule 14a–8, 17 C.F.R. § 240.14a–8, which is the shareholder proposal rule. Plaintiff brings this claim because on November 17, 2000, Plaintiff submitted the following shareholder proposal (the "2001 Proposal") to Tyco International for inclusion in Tyco International's 2001 proxy materials:

PENSION PLAN FOR FORMER EMPLOYEES OF COMPANIES BOUGHT BY TYCO TO PROVIDE OPTION OF COLA BENEFIT OR PAYOUT

WHEREAS:

Tyco International Ltd. ("the Company") has purchased companies that administered pension plans and has terminated further participation in these plans, and these plans provided a substantial employment benefit;

The pension plans of these companies were adequately funded prior to being bought out. Managed properly, the funds in these plans can provide either annual cost of living allowance (COLA) increases or lump sum settlements as these options were generally implicit within such plans;

Employees were not provided any options regarding disposition of the funds their former companies had contributed to the pension plan on their behalf and are currently unable to invest their own pension funds;

Employees who participated in pension plans will now suffer an unfair and unnecessary financial hardship due to plan termination. If inflation averages just 3½ %/year, an example 45 year old will be financially threatened when the real value of his fixed benefit is cut in half when he finally begins receiving benefit payments at age 65. Enhanced 401K plans do not close this gap for older individuals with shorter investment time horizons;

Employees are critical to the success of the Company. Shareholders recognize that it is in the best interests of both the Company and shareholders to ensure fair and equitable treatment of employees;

RESOLVED: That the shareholders hereby request the Board of Directors adopt a policy providing pension plan participants of those companies purchased by the Company with the option of an annual cost of living allowance (COLA) increase in their pension benefit based upon the Consumer Price Index (CPI) or a fair and reasonable lump sum settlement of their pension benefits in those cases where:

1. participation in the plan has been terminated by the Company,

2. the pension fund for each group of participants covered by a specific plan is sufficiently solvent to meet the financial requirements of this proposal, and

3. plan participants who are currently eligible to receive pension benefits have not yet begun receiving benefits;

with these options entirely funded out of each plan participant's former company's pension plan fund with annual COLA increases commencing upon the anniversary date of the plan's termination; and if the Company deems a particular company's pension plan funding inadequate to fund these options, that an independent auditor establish said fund is either sufficiently or insufficiently solvent to support either option.

(Tyco Int'l's Br. Supp. 12(b)(6) Mot. Ex. A at 19.)

Securities Exchange Act Rule 14a–8 requires, under certain circumstances, a public company to include "a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders." 17 C.F.R. § 240.14a–8. Under Rule 14a–8, a shareholder may only submit one proposal per shareholders' meeting, and the proposal may not exceed 500 words. *Id.* § 240.14a–8(c)–(d). To be eligible to submit a proposal, the shareholder must meet certain stock ownership requirements. *Id.* § 240.14a–8(b). In addition, the shareholder must meet certain deadlines for submitting proposals. If, as in the present case, the shareholder seeks to have his proposal included in a proxy statement for a regularly scheduled annual meeting, "[t]he proposal must be received at the company's principal executive offices not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting." *Id.* § 240.14a–8(e)(2). If the shareholder fails to meet the eligibility requirements for filing a shareholder proposal (after proper notice from the company to correct deficiencies), or if the proposal is properly excludable for the substantive reasons listed in Rule 14a–8(i), the company may exclude the proposal from its proxy materials. In order for the company to exclude the proposal from its proxy materials, Rule 14a–8(j) requires the company to "file its reasons with the Commission no later than 80 calendar days before it files its definitive proxy statement and form of proxy with the Commission." *Id.* § 240.14a–8(j).

In the present case, Plaintiff submitted the 2001 Proposal to Tyco International on November 17, 2000, for inclusion in Tyco International's 2001 proxy materials. (Compl.¶ 28.) Tyco International determined, however, that the proposal was properly excludable under Rule 14a–8(i) and therefore notified the SEC of its intention to exclude the proposal. Specifically, Tyco International asserted that the proposal was excludable pursuant to two of the exceptions listed in Rule 14a–8(i). First, Tyco International contended that the proposal was excludable under Rule 14a–8(i)(4) because it "relate[d] to the redress of a personal claim or grievance against" Tyco International and/or was "designed to result in a benefit to

[Plaintiff], or to further a personal interest, which is not shared by the other shareholders at large ...." *Id.* § 240.14a–8(i)(4). Tyco International also asserted that the proposal was excludable pursuant to Rule 14a–8(i)(7) because it "relat[ed] to the company's ordinary business operations," *id.* § 240.14a–8(i)(7), and "involve[d] business matters that are mundane in nature and [did] not involve any substantial policy or other considerations ...." *Adoption of Amendments Relating to Proposals by Security Holders, Exchange Act Release No. 12999*, 1976 WL 160347, at *12 (Nov. 22, 1976). On December 21, 2000, the SEC staff issued a no-action letter advising Tyco International that it would "not recommend enforcement action to the Commission if Tyco omit[ted] the proposal from its proxy materials in reliance on rule 14a–8(i)(7)." Tyco Int'l Ltd., SEC No–Action Letter, 2000 WL 1874063, at *22 (Dec. 21, 2000). Based on the SEC's no-action letter, Tyco International omitted Plaintiff's shareholder proposal from its 2001 proxy materials.

Plaintiff has brought his present lawsuit alleging that Tyco International improperly excluded the 2001 Proposal from its proxy materials. Plaintiff further alleges that he believes that Tyco International will continue to exclude "any and all shareholder proposals" that he submits. (Compl.¶ 30.) Tyco International contends, however, that with respect to the 2001 Proposal, because the 2001 shareholders' meeting has already taken place without Plaintiff's proposal, Plaintiff's claims with respect to the 2001 Proposal are moot. With respect to any future proposals, Tyco International further contends that "Plaintiff does not state, much less describe, the proposal that he would submit to International"; therefore, Tyco International contends that Plaintiff "is speculating over future scenarios ...." (Tyco Int'l's Br. Supp. 12(b)(6) Mot. Dismiss at 14.)

The Court finds, however, that it is clear, from a liberal reading of Plaintiff's pro se Complaint, that Plaintiff requests this Court to declare that he is entitled to have a proposal identical to the 2001 Proposal included in the proxy materials for Tyco International's next regularly scheduled shareholders' meeting. Thus, the Court finds that Plaintiff is not "speculating over future scenarios," but is instead seeking redress for an actual injury in fact, that is, Tyco International's refusal to include his previously rejected shareholder proposal in any of its proxy materials. Although Tyco International has cited various cases in support of its position that this dispute is not justiciable, these cases do not deal with the precise issue before this Court, that is, whether Plaintiff may seek a declaration from this Court that Tyco International improperly excluded his shareholder proposal, thus entitling Plaintiff to a court order requiring Tyco International to include his shareholder proposal in the proxy materials for its next regularly scheduled shareholders' meeting.[9]

The Court therefore finds it appropriate to address the merits of Plaintiff's request to have his proposal included in Tyco International's proxy materials. As an initial matter, the Court again notes the procedural posture of this case. Tyco International seeks a Rule 12(b)(6) dismissal of Plaintiff's shareholder proposal claim. The burden is on Tyco International, however, to show that Plaintiff's proposal is properly excludable. *Amalgamated Clothing & Textile Workers Union v. Wal–Mart Stores, Inc.*, 821 F.Supp. 877, 892 (S.D.N.Y.1993). This Court nevertheless may resolve this matter at the 12(b)(6) stage. *See Grimes v. Ohio Edison Co.*, 992 F.2d 455, 458 (2d Cir.1993) (granting the defendant's motion to dismiss where the proposal was clearly excludable pursuant to Rule 14a–8(i)(7)); *Schaefer v. MGM Mirage, Inc.*, 306 F.Supp.2d 971, 973 (D.Nev.2003) (same).

**9.** Although neither party brought the issue to the Court's attention, the Court, while conducting legal research into the merits of Plaintiff's shareholder proposal claim, discovered that Plaintiff did in fact resubmit the same shareholder proposal to Tyco International on February 24, 2003, approximately one month before Tyco International filed its Reply Brief on March 24, 2003. Tyco Int'l Ltd., SEC No–Action Letter, 2004 WL 35020, at *1 (Jan. 2, 2004). On November 7, 2003, Tyco International again advised the SEC of its intention not to include Plaintiff's shareholder proposal in its 2004 proxy materials, and the SEC staff again stated that it would not recommend enforcement pursuant to Rule 14a–8(i)(7). *Id.* at *1, *8–9.

Tyco International contends that it properly excluded, and may continue to properly exclude, Plaintiff's shareholder proposal pursuant to Rule 14a–8(i)(7), as "deal[ing] with a matter relating to the company's ordinary business operations" that "involves business matters that are mundane in nature and does not involve any substantial policy or other considerations . . . ." In support of this position, Tyco International relies heavily upon the district court case of *Austin v. Consolidated Edison Co.*, 788 F.Supp. 192 (S.D.N.Y. 1992), involving a shareholder proposal endorsing a policy that would permit the company's employees to retire after thirty years of service with the company, regardless of the employees' age. *Id.* at 193. The district court held that the proposal was properly excludable pursuant to Rule 14a–8(i)(7), finding persuasive "the SEC's long record of no-action letters on the precise subject at issue here: companies seeking to exclude pension proposals from their proxy materials." *Id.* at 195. In support of this finding, the district court noted that the defendant had provided to the Court copies of over fifty no-action letters on the issue. *Id.*

While it is true that this Court need not defer to the SEC staff's decision not to recommend enforcement with respect to Tyco International's decision to exclude Plaintiff's shareholder proposal, the Court does note that "courts have relied on the consistency of the SEC staff's position and reasoning on a given issue, or the lack of consistency, in determining whether a proposal that was deemed excludable by the SEC staff can in fact be omitted under Rule [14a–8(i)(7) ]." *Amalgamated Clothing & Textile Workers Union*, 821 F.Supp. at 885 (citing *Austin*, 788 F.Supp. at 195). In the present case, the SEC's rejection of shareholder proposals dealing with pension plans militates strongly in favor of a finding that Plaintiff's proposal is properly excludable pursuant to Rule 14a–8(i)(7). In addition to the *Austin* Court's reference to over fifty no-action letters on point, this Court also notes the consistent position of the SEC in issuing no action letters with respect to proposals related to pension plans. *See, e.g.*, Lucent Techs. Inc., SEC No–Action Letter, 2003 WL 23220842, at *17 (Oct. 1, 2003) (stating that the SEC staff would not recommend enforcement with respect to a proposal urging Lucent's board of directors "to adopt a policy such that in the future only independent Directors participate in recommending policies governing the Company's pension benefit trusts . . . and only independent fiduciaries are appointed to invest or manage plan assets, free from specific investment direction from Lucent management" (internal quotation marks omitted)); Bank of America Corp., SEC No–Action Letter, 2002 WL 440981, at *4 (Mar. 5, 2002) (stating that the SEC staff would not recommend enforcement of a proposal "request[ing] that Bank of America adopt a policy directing that retirees receive an annual cost of living adjustment based on the Consumer Price Index"). *But cf.* Int'l Bus. Machs. Corp., SEC No–Action Letter, 2000 WL 202081, at *18 (stating that the SEC staff believed "that proposals relating to the conversion from traditional defined benefit pension plans to cash-balance plans cannot be considered matters relating to a registrant's ordinary business operations" because this issue had generated widespread public debate and "raise[d] significant social and corporate policy issues").

The Court therefore finds, as a matter of law, that Plaintiff's proposal is properly excludable pursuant to Rule 14a–8(i)(7) because it relates to Tyco International's ordinary business operations. Having dismissed Plaintiff's claim pursuant to Rule 14a–8(i)(7), the Court specifically declines to address whether it is also properly excludable pursuant to Rule 14a–8(i)(4). Because Plaintiff has failed to state a claim that Tyco International has improperly denied his request to include his shareholder proposal in Tyco International's proxy materials. Plaintiff's shareholder proposal claim (third claim) is dismissed with prejudice.

4. Plaintiff's Fourth and Fifth Claims Against Tyco Electronics: Age Discrimination

a. Plaintiff's Fourth Claim Against Tyco Electronics: Termination on the Basis of Age

In his fourth claim, Plaintiff contends that he was terminated on the basis of

his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. In addition, although not entirely clear from Plaintiff's Complaint, Plaintiff also appears to bring a wrongful-discharge claim under North Carolina law. The Court will first discuss Plaintiff's ADEA claim and will then discuss Plaintiff's wrongful-discharge claim.

### (1) Termination in Violation of the ADEA

Before a plaintiff may bring a claim under the ADEA, he must first file a charge with the EEOC "within 180 days after the alleged unlawful practice occurred ...." 29 U.S.C. § 626(d)(1). As the Fourth Circuit Court of Appeals has held, "[t]he 180–day limitations period for an ADEA action arising out of a job termination commences when the employee is informed of his termination, even if he is not then aware of its discriminatory nature." *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 200 (4th Cir.1990) (citation omitted). In this case, Plaintiff was terminated on April 29, 1999, and there are no allegations that he was informed of his termination prior to that date. Plaintiff was therefore required to file his EEOC charge within 180 days after April 29, 1999, that is, on or before October 26, 1999. Plaintiff admits, however, that he failed to file a charge with the EEOC on or before October 26, 1999. (Pl.'s Br. Supp. Resp. Tyco Elecs.' Mot. Dismiss at 7–8.) The court of appeals in *Olson* noted, "[h]owever, [that] the limitations period is not jurisdictional, and may equitably be tolled if a plaintiff proves that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." *Olson,* 904 F.2d at 200 (internal quotations omitted) (citation omitted). However, the court of appeals in *Olson* cautioned that "[e]quitable tolling is a narrow limitations exception ...." *Id.* at 201.

Plaintiff contends that he has now filed an EEOC charge and that he meets the narrow exception to qualify for equitable tolling. (*See* Pl.'s Br. Supp. Resp. Tyco Elecs.' Mot. Dismiss at 9.) The Court first notes that Plaintiff fails to specify, either in his Complaint or in his Opposition Brief, when he allegedly filed his EEOC charge. Assuming

that Plaintiff did in fact file an EEOC charge at some point after October 26, 1999, the Court notes that the doctrine of equitable tolling would still not apply so as to make Plaintiff's EEOC charge timely. Plaintiff has failed to make any allegations in his Complaint supporting equitable tolling. Further, Plaintiff's admissions in his brief demonstrate, as a matter of law, that a reasonably prudent person in Plaintiff's position would have filed a charge with the EEOC within the 180–day limitations period because it is clear that Plaintiff was on notice that he should have filed an EEOC charge but instead unreasonably decided not to file one. In summary, Plaintiff makes the following representations in his brief: (1) some of Plaintiff's former coworkers filed EEOC charges against Tyco Electronics within the 180–day limitations period and retained legal counsel; (2) these coworkers encouraged Plaintiff to preserve his legal rights by filing an EEOC charge; (3) after investigation, these coworkers learned that there was insufficient evidence to pursue legal action against Tyco Electronics; (4) Plaintiff contacted the EEOC before October 26, 1999, and was instructed to fill out an "EEOC Initial Intake Information" form; (5) Plaintiff refused to sign the form because he did not want to commit perjury; (6) Plaintiff learned of a pattern of age discrimination after October 26, 1999, but when he again contacted the EEOC, he was informed that because the 180–day limitations period had passed, he could not pursue a claim; and (7) Plaintiff filed a charge anyway. (*Id.* at 7–8.)

Plaintiff contends that if he had initially filled out the EEOC intake form, he would have been committing perjury because he did not have enough evidence of discrimination to "declare that he ha[d] been discriminated against under penalty of perjury." (*Id.* at 8.) Plaintiff, however, misreads the EEOC intake form. The form merely asked Plaintiff to state whether he believed that he had been discriminated against, not whether he believed he currently possessed enough evidence to prove his case against Tyco Electronics. As the court of appeals held in *Olson,* "[t]he function of a charge is to initiate the EEOC investigation of employer actions which the employee believes violated the

ADEA. It is not necessary to the filing of a charge that one possess a proven case." *Olson,* 904 F.2d at 202 (internal quotations omitted) (citations omitted). Plaintiff has admitted that he had sufficient facts at the time to file an EEOC charge against Tyco Electronics. His failure to do so does not toll the limitations period. As the court of appeals held in *Olson,* "[i]t is clear that [Plaintiff] was aware of sufficient facts within the limitations period to file a charge alerting the EEOC that he believ[ed] that [his] employer had violated the ADEA." *Id.* (third and fourth alterations in original) (internal quotations omitted). Thus, it is clear that a reasonably prudent person possessing the facts Plaintiff possessed would have filed a charge with the EEOC within 180 days of being terminated.

Plaintiff further contends, however, that inaccurate information given to him by the EEOC caused him not to file his EEOC charge. As another court in this district has held, "courts freely allow [equitable tolling] where the plaintiff's delay in filing was the result of misleading conduct or misinformation by the agency . . . ." *Grey v. Henderson,* 169 F.Supp.2d 448, 452 (M.D.N.C.2001). The flaw with Plaintiff's argument, however, is that he did not receive any misinformation from the EEOC. The only "misinformation" he claims he received was being informed by the EEOC that because 180 days had passed from his termination date, he could no longer file an ADEA claim. This statement from the EEOC is not inaccurate; in fact, it is a perfect description of Plaintiff's legal situation with respect to his ADEA claim. As discussed above, a reasonable person in Plaintiff's position would have filed an EEOC charge within 180 days of his termination date. Nothing the EEOC told Plaintiff caused him to not file his charge within this time period. Therefore, Plaintiff's argument that he was misled by the EEOC is without merit. Because Plaintiff failed to comply with the 180–day limitations period for filing a charge with the EEOC, to the extent that Plaintiff's fourth claim is brought pursuant to the ADEA, Plaintiff's fourth claim is dismissed with prejudice.

### (2) Wrongful Discharge in Violation of the Public Policy of North Carolina

In his fourth claim Plaintiff also contends that he was terminated on the basis of age in violation of the public policy of North Carolina as articulated in the North Carolina Equal Employment Practices Act. *See* N.C. Gen.Stat. §§ 143–422.1 to –422.3. Section 143–422.2 states that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . age . . . by employers which regularly employ 15 or more employees." Thus, although North Carolina follows the employment-at-will doctrine, North Carolina courts have recognized a limited exception to this doctrine for terminations that violate public policy. However, a common-law wrongful-discharge claim must be brought within three years of the date of termination or it is time barred. *Renegar v. R.J. Reynolds Tobacco Co.,* 145 N.C.App. 78, 79, 549 S.E.2d 227, 229 (2001) (citing N.C. Gen.Stat. § 1–52(5)) (holding that "[i]t is undisputed that the statute of limitations for a wrongful discharge action under North Carolina law is three years from the date of discharge"). In the present case, Plaintiff was discharged on April 29, 1999, but did not file his lawsuit until September 30, 2002. Therefore, to the extent that Plaintiff has asserted a wrongful-discharge claim, Plaintiff's claim is time barred because it was filed more than three years after Plaintiff was terminated.

### (3) Conclusion with Respect to Termination on the Basis of Age

In conclusion, to the extent that Plaintiff brings his fourth claim pursuant to the ADEA, Plaintiff's claim is barred because he failed to timely file an EEOC charge. In addition, to the extent that Plaintiff brings his fourth claim as a wrongful-discharge claim under North Carolina law, Plaintiff's claim is barred by the three-year statute of limitations. As such, Plaintiff's fourth claim is dismissed with prejudice.

**b. Plaintiff's Fifth Claim: Tyco Electronics' Refusal to Allow Plaintiff to Take Early Retirement**

In his fifth claim, Plaintiff asserts that he was prohibited from participating in Tyco Electronics' early-retirement program because he had not attained the age of fifty-five. Although it is unclear from Plaintiff's Complaint or his brief, Plaintiff seems to contend that Tyco Electronics' refusal to allow him to participate in the early-retirement program violated both the ADEA and his rights pursuant to the Fourteenth Amendment. With respect to Plaintiff's ADEA claim against Tyco Electronics, as discussed more fully above with respect to Plaintiff's fourth claim, his claims are time barred because he failed to file his EEOC charge with 180 days after being denied permission to participate.

Furthermore, even if Plaintiff had filed his charge timely, Plaintiff's ADEA claim alleging that Tyco Electronics unlawfully denied Plaintiff the right to take early retirement is without merit. The ADEA specifically allows an employer to base eligibility for an early-retirement incentive plan on "the attainment of a minimum age." 29 U.S.C. § 623(*l*)(1)(A). In addition, in light of the Supreme Court's recent decision in *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004), Plaintiff's early-retirement claim is also foreclosed because the ADEA "does not mean to stop an employer from favoring an older employee over a younger one." 540 U.S. at ——-——, 124 S.Ct. at 1248–49. Therefore, based upon the ADEA's early-retirement exception and the Supreme Court's recent decision in *Cline*, it is clear that the ADEA does not allow Plaintiff to pursue his early-retirement claim.

Plaintiff, however, challenges the constitutionality of this provision of the ADEA, reasoning that it violates the Equal Protection Clause of the Fourteenth Amendment by making impermissible classifications on the basis of age. Plaintiff's constitutional argument is without merit. First, Plaintiff has cited no case holding this provision of the ADEA unconstitutional, and this Court can locate none. Second, the Supreme Court has

held that the constitutional basis of the ADEA is the Commerce Clause, not the Equal Protection Clause. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 78, 120 S.Ct. 631, 643, 145 L.Ed.2d 522 (2000). Thus, Plaintiff's ADEA claim against Tyco Electronics for refusing to allow him to participate in the early-retirement program fails as a matter of law. Accordingly, Plaintiff's fifth claim is dismissed with prejudice.

**5. Plaintiff's First and Seventh Claims Against Tyco Electronics**

In Plaintiff's first and seventh claims, Plaintiff makes a variety of claims against Tyco Electronics arising from his employment with Tyco Electronics. Tyco Electronics contends that all of these claims are time-barred and/or otherwise without merit. The Court will address Plaintiff's claims and Tyco Electronics' contentions in turn.

**a. Plaintiff's First Claim: Improper Mileage Reimbursement**

In Plaintiff's first claim, Plaintiff alleges that Tyco Electronics failed to reimburse Plaintiff for mileage that he incurred while employed with Tyco Electronics (then AMP). Plaintiff alleges that he properly submitted travel expense forms to Tyco Electronics but Tyco Electronics failed to reimburse him in the amount of $1010. The primary dispute between the parties is whether Plaintiff's first claim is barred by the statute of limitations. Tyco Electronics contends that the two-year statute of limitations contained in the North Carolina Wage and Hour Act, North Carolina General Statutes sections 95–25.1 to 95–25.25, applies and bars Plaintiff's claim. *See* N.C. Gen.Stat. § 95–25.22(f) (two-year statute of limitations). The Court notes that this limitations period " 'begins to run on the date the promise is broken. In no event can the limitations period begin to run until the injured party is at liberty to sue.' " *Hamilton v. Memorex Telex Corp.*, 118 N.C.App. 1, 9, 454 S.E.2d 278, 282 (1995) (quoting *Glover v. First Union Nat'l Bank of N.C.*, 109 N.C.App. 451, 455, 428 S.E.2d 206, 208 (1993)). In this case, the Wage and Hour Act's limitations period began to run on "the next regular payday" after Plaintiff was

terminated on April 29, 1999. *See* N.C. Gen. Stat. § 95–25.7 (requiring employers to pay terminated employees "all wages due on or before the next regular payday").

As an initial matter, Tyco Electronics contends that the Wage and Hour Act provides Plaintiff's exclusive remedy and therefore precludes Plaintiff from bringing his first claim under any other theory. Plaintiff contends, however, that the Wage and Hour Act's two-year statute-of-limitations period does not apply to bar his claims. He instead argues, under various alternative theories, that the statute of limitations is actually either six, four, or three years. First, Plaintiff contends that the six-year statute of limitations period of Article III of the Uniform Commercial Code, North Carolina General Statutes sections 25–3–101 to –605, applies and permits Plaintiff's claim to proceed. *See id.* § 25–3–118. Second, Plaintiff contends that a general four-year federal statute-of-limitations period applies and Plaintiff's claim is not barred. Third, Plaintiff contends that his claim is governed by the three-year statute of limitations for contract actions, North Carolina General Statutes section 1–52(1), and his claim is still not time barred. The Court will therefore determine which law applies to Plaintiff's claim and whether Plaintiff's claim for mileage reimbursement should be dismissed as time barred.

> (1) Whether the North Carolina Wage and Hour Act's Two–Year Limitations Period Bars Plaintiff's First Claim (Mileage Reimbursement Claim)

 The Court will first address whether the Wage and Hour Act applies and bars Plaintiff's first claim. The Court notes that the North Carolina Wage and Hour Act states that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday.... Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance." N.C. Gen.Stat. § 95–25.6. The Act defines the term "wage" as

> compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities. For the purposes of G.S. 95–25.6 through G.S. 95–25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and *other amounts promised* when the employer has a policy or a practice of making such payments.

*Id.* § 95–25.2(16) (emphasis added). Thus, the first question before the Court is whether reimbursement for travel expenses incurred meets the definition of "wage," that is, whether it is encompassed by the term "other amounts promised."

Plaintiff contends that expense reimbursement cannot be an "other amount promised" because it is not "compensation for labor or services rendered." Tyco Electronics replies, however, that Plaintiff has cited no authority for this proposition. The Court notes, however, that Tyco Electronics has likewise cited no authority for its contention that an expense reimbursement meets the definition of wage in the North Carolina Wage and Hour Act. The Court has searched the North Carolina case law and has found no cases on point. However, the Court does note that the rules promulgated by the North Carolina Department of Labor state that "other amounts promised" "shall include, but are not limited to, *travel expenses,* holiday pay, birthday pay, jury duty pay, shift premium pay, prizes, moving expenses, educational expenses, or telephone expenses." N.C. Admin. Code tit. 13, r. 12.0310 (emphasis added). Thus, the Court finds that, as interpreted by the North Carolina Department of Labor, the Wage and Hour Act would encompass Plaintiff's claim. To the extent that Plaintiff is attempting to bring a Wage and Hour Act claim, therefore, that claim is barred by the Wage and Hour Act's two-year statute of limitations.

Although the Court agrees with Tyco Electronics that Plaintiff may not bring a Wage and Hour Act claim against Tyco Electronics because of the time bar, the question still remains whether the Wage and Hour Act would preempt any claims that Plaintiff

might have under other legal theories. Although Tyco Electronics repeatedly asserts that the Wage and Hour Act provides Plaintiff's exclusive remedy with respect to Plaintiff's expense reimbursement claim, it cites no authority for this position. Because the issue of whether the Wage and Hour Act provides Plaintiff's exclusive remedy is not dispositive, the Court will merely assume, without deciding, that the Wage and Hour Act does not provide Plaintiff's exclusive remedy. The Court will therefore address Plaintiff's contentions that a six-year, four-year, or three-year statute of limitations period applies to Plaintiff's first claim.

> (2) Applicability of the Six–Year Statute of Limitations of UCC Article III to Plaintiff's First Claim (Mileage Reimbursement Claim)

■ Plaintiff first contends that the UCC's six-year statute of limitations applies to his first claim and therefore this claim is not time barred. Plaintiff contends that Article III of the UCC applies to Plaintiff's first claim because the Personal Vehicle Mileage Expense forms ("expense forms") are negotiable instruments. In support of his contention that these forms are negotiable instruments, Plaintiff argues that "upon demand they are convertible into cash." (Pl.'s Br. Supp. Resp. Tyco Elecs.' Mot. Dismiss at 5.) The Court notes that negotiable instruments are defined in North Carolina General Statutes section 25–3–104, which states, in pertinent part, that to be a negotiable instrument, the instrument must be "an unconditional promise or order to pay a fixed amount of money ... payable to bearer or to order at the time it is issued or first comes into possession of a holder ...." N.C. Gen.Stat. § 25–3–104(a). In the present case, there are no allegations supporting Plaintiff's arguments that the expense form meets these requirements. In fact, it is clear from Plaintiff's allegations and contentions that *Plaintiff* completed the expense forms and gave them back to Tyco Electronics. Plaintiff is obviously not contending that he gave Tyco Electronics a negotiable instrument after he completed the expense forms. Contrary to Plaintiff's assertions, the only negotiable instrument involved with expense reimbursement would be the check that Plaintiff argues that Tyco Electronics should now give him in payment for his mileage; the expense reimbursement form is merely an application for such a payment. Therefore, because the expense forms are not negotiable instruments, Plaintiff is unable to assert his first claim pursuant to the UCC. Therefore, the UCC's six-year statute of limitations does not apply to plaintiff's first claim for mileage reimbursement.

> (3) Applicability of a Four–Year Federal Limitations Period to Plaintiff's First Claim (Mileage Reimbursement Claim)

Plaintiff next contends that regardless of what legal theory he uses to bring his first claim, a general four-year federal statute-of-limitations period applies to this claim. The Court finds Plaintiff's argument to be without merit. Plaintiff cites no authority for this assertion, and this Court can locate none. As this Court has previously held, in a claim "based on federal diversity jurisdiction, the Court applies the North Carolina statute of limitations, as well as North Carolina law construing it." *Faircloth v. Nat'l Home Loan Corp.*, 313 F.Supp.2d 544, 552 (M.D.N.C.2003) (citing *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir.1999)), *aff'd per curiam sub nom. Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Trust*, 87 Fed. Appx. 314 (2004).

> (4) Applicability of the Three–Year Statute of Limitations for Contract Actions to Plaintiff's First Claim (Mileage Reimbursement Claim)

Plaintiff finally contends, however, that the three-year statute of limitations for contract actions governs his first claim. *See* N.C. Gen.Stat. § 1–52(1). Plaintiff contends that this statute-of-limitations period applies because Tyco Electronics had a contractual obligation to reimburse him for travel expenses and it breached that contract by failing to do so. Neither Plaintiff nor Defendant disputes that the statute of limitations for contract actions in North Carolina is three years. What they appear to dispute, however, is the following: (1) when Plaintiff's claim accrued;

(2) whether the statute of limitations was tolled; and (3) whether Tyco Electronics is equitably estopped from asserting the statute of limitations. As the North Carolina courts have held, "[i]n a contract action, the statute of limitations begins to run when the contract has been breached and the cause of action has accrued." *Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm.,* 310 N.C. 445, 448, 312 S.E.2d 421, 424 (1984) (citing *City of Reidsville v. Burton,* 269 N.C. 206, 152 S.E.2d 147 (1967)). Thus, absent tolling or equitable estoppel, the statute of limitations began to run when Tyco Electronics breached its agreement to reimburse Plaintiff so that Plaintiff could bring suit against Tyco Electronics. In the present case, it is clear from the face of Plaintiff's Complaint that Tyco Electronics' alleged contract to reimburse Plaintiff for mileage arose while Plaintiff was still employed with Tyco Electronics. (*See* Compl. ¶ 18 (stating that Tyco Electronics "maintained a policy of reimbursing employees for travel expenses related to conducting company business during the period that plaintiff was employed by [Tyco Electronics]").) It is further clear from Plaintiff's Complaint that his employment with Tyco Electronics terminated "[o]n or about April 29, 1999." (*Id.* ¶ 8.) Thus, if Tyco Electronics did breach its obligation to reimburse Plaintiff for his travel expenses, this breach had clearly occurred well before September 30, 1999, which was three years before he filed his lawsuit against Tyco Electronics.

■ Therefore, unless the statute of limitations is tolled or Tyco Electronics is equitably estopped from asserting it, Plaintiff's first claim for mileage reimbursement is time barred. While Plaintiff's Complaint contains no allegations that either of these doctrines is applicable, the Court does note that in Plaintiff's brief he contends that "Plaintiff contacted the defendant twice during 1999 regarding [the travel vouchers,] with the last contact occurring during the latter half of the fourth quarter .... On both occasions, a representative of the defendant indicated that Plaintiff would receive payment for submitted Travel Vouchers." (Pl.'s Br. Supp. Resp. Tyco Elecs.' Mot. Dismiss at 5.) With respect to whether the statute of limitations

has been tolled, the Court notes that under North Carolina General Statutes section 1–26, "a promise to pay the debt may extend this period to three years from the date of the promise to pay." *Springwall, Inc. v. Timeless Bedding, Inc.,* 207 F.Supp.2d 410, 420 n. 8 (M.D.N.C.2002) (citing *Coe v. Highland Sch. Assocs. Ltd. P'ship,* 125 N.C.App. 155, 157, 479 S.E.2d 257, 259 (1997)). However, the promise must be in writing to toll the statute of limitations. N.C. Gen.Stat. § 1–26. Because Plaintiff has not alleged that he received a written promise from Tyco Electronics that he would be paid for his travel expenses, section 1–26 does not apply to toll the statute of limitations.

■ With respect to equitable estoppel as to Plaintiff's breach-of-contract claim for mileage reimbursement, the Court notes that a plaintiff may invoke the doctrine of equitable estoppel "to prevent a defendant from relying on a statute of limitations if the defendant, by deception or a violation of duty toward the plaintiff, caused the plaintiff to allow his claim to be barred by the statute of limitations." *Blizzard Bldg. Supply, Inc. v. Smith,* 77 N.C.App. 594, 595, 335 S.E.2d 762, 763 (1985) (citing *Troy's Stereo Ctr., Inc. v. Hodson,* 39 N.C.App. 591, 251 S.E.2d 673 (1979)). To make out an equitable-estoppel claim, Plaintiff must show the following with respect to Tyco Electronics: "(1) conduct which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Id.* (citing *In re Will of Covington,* 252 N.C. 546, 114 S.E.2d 257 (1960)). Plaintiff must further show that he had "(1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of [Tyco Electronics] to his prejudice." *Id.* (citing *In re Will of Covington*).

Here, Plaintiff's allegations do not support his claim for equitable estoppel. *See Norris v. Belcher,* 86 N.C.App. 459, 461, 358 S.E.2d 79, 80 (1987) (holding that the plaintiff's evidence that the defendant repeatedly promised to pay him "[fell] far short of supporting the conclusion that defendants are equitably

estopped from asserting the statute of limitations as a defense"). The Court finds that it is Plaintiff's own unreasonable conduct, not the alleged misconduct of Tyco Electronics, that has prejudiced Plaintiff. "When a party is misled through his own lack of diligence and reasonable care, he may not then avail himself of the doctrine of equitable estoppel." *N.C. Fed. Sav. & Loan Ass'n v. Ray*, 95 N.C.App. 317, 323, 382 S.E.2d 851, 855 (1989) (citing *Wachovia Bank & Trust Co. v. Wayne Fin. Co.*, 262 N.C. 711, 138 S.E.2d 481 (1964)). The Court finds that Plaintiff's delay in filing his first claim demonstrates, as a matter of law, that his failure to file his first claim within the limitations period was due to "his own lack of diligence and reasonable care," not any action by Tyco Electronics. As such, Tyco Electronics is not equitably estopped from asserting the statute of limitations with respect to Plaintiff's first (mileage reimbursement) claim.

Finally, Plaintiff's assertion in his brief that Tyco Electronics' promise to him in late 1999 constituted a contract novation is also unavailing. A novation, of course, "is the substitution of a new contract for an old one which is thereby extinguished." *Carolina Equip. & Parts Co. v. Anders*, 265 N.C. 393, 400, 144 S.E.2d 252, 257 (1965) (citing *Tomberlin v. Long*, 250 N.C. 640, 109 S.E.2d 365 (1959)). Here there are no allegations supporting Plaintiff's contention that Tyco Electronics' purported promise to pay Plaintiff his mileage in late 1999 constituted a new contract to reimburse Plaintiff for travel expenses that extinguished the earlier contract. Therefore, Plaintiff's contention that a contract novation occurred in late 1999 is also without merit.

### (5) Conclusion with Respect to Plaintiff's First Claim (Mileage Reimbursement Claim)

In summary, the Court finds that Plaintiff's first claim, whether construed as a claim under the North Carolina Wage and Hour Act or as a claim for breach of contract, is barred by the statute of limitations because it accrued prior to September 30, 1999, was filed on September 30, 2002, and Plaintiff has failed to show why the statute of limitations should be tolled or why Tyco Electronics should be estopped from asserting it. As such, Tyco Electronics' Motion to Dismiss Plaintiff's first claim is granted, and this claim is dismissed with prejudice.

### b. Plaintiff's Seventh Claim: Multiple Termination–Related Claims Against Electronics

In Plaintiff's seventh claim, Plaintiff makes a number of allegations against Tyco Electronics related to the termination of his employment: (1) Tyco Electronics "failed to properly compensate plaintiff pursuant to its contract with plaintiff" and Tyco Electronics "failed to reimburse and improperly reimbursed plaintiff for accrued vacation, personal day, and other benefits" (collectively referred to by the Court as "compensation claims"); (2) Tyco Electronics "improperly taxed severance payment up to $35,000.00 that was exempt from NC state income tax and failed to pay interest thereon"; and (3) Tyco Electronics "denied continuation of plaintiff's medical, dental, and vision insurance for eighteen (18) months." (Compl.¶¶ 54–55.) The Court will address these claims in turn.

### (1) Plaintiff's Compensation Claims Against Tyco Electronics

Plaintiff's allegations that Tyco Electronics "failed to properly compensate plaintiff pursuant to its contract with plaintiff" and "failed to reimburse and improperly reimbursed plaintiff for accrued vacation, personal day, and other benefits" are apparently either Wage and Hour Act claims or claims for breach of an employment contract between Tyco Electronics and Plaintiff. (*See* Compl. ¶¶ 54–55.) Tyco Electronics contends that these claims are without merit and, even if they have merit, they are barred by either or both of the statutes of limitations of the North Carolina Wage and Hour Act (two years) or the statute of limitations for contract actions (three years). In his Response Brief, Plaintiff does not dispute Tyco Electronics' contentions. Therefore, the Court deems Plaintiff to have abandoned these claims. Regardless of whether Plaintiff has abandoned these claims, the Court

finds that, even assuming these allegations state cognizable claims, these claims are time barred. To the extent Plaintiff is seeking relief under the Wage and Hour Act, Plaintiff filed his suit well beyond the two-year statute of limitations period. *See* N.C. Gen.Stat. § 95–25.22(f) (Wage and Hour Act). Furthermore, to the extent Plaintiff was seeking relief under a contract theory, he also filed his suit well beyond the three-year statute of limitations period. *See id.* § 1–52(1) (contract). Therefore, Plaintiff's compensation claims (articulated under Plaintiff's seventh claim) that Tyco Electronics "failed to properly compensate plaintiff pursuant to its contract with plaintiff" and "failed to reimburse and improperly reimbursed plaintiff for accrued vacation, personal day, and other benefits" are dismissed with prejudice.

### (2) Plaintiff's Claim Against Tyco Electronics for Improper Tax Withholding

Plaintiff further alleges that Tyco Electronics improperly withheld taxes on his severance pay and therefore owes him interest on the improperly withheld amount. The Court notes that Plaintiff is correct that the first $35,000 of "severance wages" are not subject to North Carolina income tax. *See* N.C. Gen.Stat. § 105–134.6(b)(11). Severance wages are defined as "wages received by a taxpayer from an employer as the result of the taxpayer's permanent, involuntary termination from employment through no fault of the employee." *Id.* Because the first $35,000 of severance wages are not subject to North Carolina income tax, when withholding state income taxes, the employer should not withhold taxes on severance wages up to this amount. *See id.* § 105–163.2(a) (requiring employers to "deduct and withhold from the wages of each employee the State income taxes payable by the employee on the wages"); *id.* § 105–163.1(13)(a) (defining the term "wages" and stating that this term "does not include ... [t]he amount of severance wages paid to an employee during the taxable year that is exempt from State income tax for that taxable year under G.S. 105–134.6(b)(11)").

Therefore, Plaintiff's contention appears to be that by withholding taxes on these wages, Tyco Electronics converted Plaintiff's property. The relief Plaintiff seeks is only interest on the improperly withheld taxes because it is obvious that once Plaintiff filed his 1999 North Carolina income tax return, he could claim a refund based upon the difference between the total taxes withheld during the year and the amount of tax he actually owed. *See id.* §§ 105–163.10, –163.16, –266. Plaintiff, however, has cited no case law, and this Court has been unable to locate any, that North Carolina would recognize a cause of action for conversion for erroneously withholding North Carolina income taxes from an employee's pay. However, assuming that Plaintiff could bring a claim for conversion, North Carolina General Statutes section 1–52(4) would apply and require him to bring that claim within three years of the date "when the wrong [was] complete," even if Plaintiff did not know the wrong had been committed. *See Davis v. Wrenn,* 121 N.C.App. 156, 158–59, 464 S.E.2d 708, 710 (1995). In this case, Plaintiff's property was purportedly converted when his taxes were erroneously withheld from his paycheck. Although the Complaint does not specify the date of that paycheck, it does state that Plaintiff was terminated on or about April 29, 1999. As such, it is clear that the alleged conversion occurred at least prior to September 30, 1999. Therefore, Plaintiff's claim, which was filed on September 30, 2002, is barred by the three-year statute of limitations. Therefore, Plaintiff's purported conversion claim against Tyco Electronics for improperly withholding taxes on his severance pay is dismissed with prejudice.

### (3) Plaintiff's Claim Against Tyco Electronics for Denial of Insurance Coverage

Plaintiff finally claims (under his seventh claim) that Tyco Electronics "denied continuation of plaintiff's medical, dental, and vision insurance for eighteen (18) months." (Compl.¶ 55.) Tyco Electronics in its Brief in Support of Its Motion to Dismiss contends that this claim "apparently relies on CO-BRA," which provides for continuation of

healthcare benefits after an employee is terminated. (Tyco Elecs.' Br. Supp. Mot. Dismiss at 13.) Thus, Tyco Electronics contends that this claim is time barred because a three-year statute of limitations applies and that limitations period began running on the date of Plaintiff's termination (April 29, 1999). Plaintiff responds, however, that "[t]he date of the contract between plaintiff and defendant relative to the continuation of Plaintiff's medical, dental and vision insurance was on or about the first quarter of the year 2000. Plaintiff became aware that defendant was not going to honor the contract after May 1, 2000." (Pl.'s Br. Supp. Resp. Tyco Elecs.' Mot. Dismiss at 18.)

Based on the contentions in Plaintiff's brief, it appears to the Court that Plaintiff may have intended to assert a contract claim of some sort in his Complaint. However, because the Complaint is utterly devoid of any supporting facts and the parties appear to dispute the basis of this claim, the Court is unable to discern the nature of Plaintiff's claim and the relief he is seeking. Therefore, the Court will, pursuant to Federal Rule of Civil Procedure 12(e) and its inherent authority, convert Tyco Electronics' Motion to Dismiss pursuant to Rule 12(b)(6) into a motion for a more definite statement pursuant to Rule 12(e). *See Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n. 6 (11th Cir. 1996) (holding that a district court has the power to *sua sponte* order a more definite statement to narrow the issues); *Gadiel v. Kennicott Ridge Assocs.*, No. 85 C 10389, 1986 WL 12815, at *3 n. 4 (N.D.Ill. Nov.12, 1986) ("Where the court deems it appropriate, it may treat a motion to dismiss as a motion for a more definite statement and grant such a motion *sua sponte*."). The Court finds that requiring Plaintiff to file a more definite statement is in the interests of justice as it will facilitate the resolution of this issue on the merits. The Court therefore directs Plaintiff to more specifically explain this claim in his Complaint in order to put Defendants and this Court on notice of the nature of the claim and the relief being sought.

(4) Conclusion with Respect to Plaintiff's Seventh Claim Against Tyco Electronics

In summary, therefore, Tyco Electronics' Motion to Dismiss Plaintiff's seventh claim is granted, except that Plaintiff is ordered to replead the nature of his claim that would arise on his allegation that Tyco Electronics "denied continuation of plaintiff's medical, dental, and vision insurance for eighteen months." As such, except for requiring a more definite statement of Plaintiff's denial-of-insurance-coverage claim, Plaintiff's seventh claim is dismissed with prejudice.

V. PLAINTIFF'S MOTION FOR SANCTIONS

■ The Court will now consider Plaintiff's Motion for Sanctions because the Court's ruling on this Motion bears on the record this Court may look to in ruling on Plaintiff's Second Motion to Amend. Plaintiff moves this Court to strike Defendants' Response to Plaintiff's Second Motion to Amend [Document # 32] and Defendants' Brief in Opposition to Plaintiff's Second Motion to Amend [Document # 33]. Plaintiff makes several arguments in support of his Motion for Sanctions: (1) Defendants failed to consult with him prior to requesting a second extension of time in November 2002 to file their Motions to Dismiss; (2) Defendants filed their Rule 7.1 Disclosure Statement four days late; and (3) Defendants violated Federal Rule of Civil Procedure 5(d) by filing an inaccurate certificate of service with their Response to Plaintiff's Second Motion to Amend and their Brief in Opposition to Plaintiff's Second Motion to Amend.

The Court, however, finds Plaintiff's Motion to be without merit. With respect to Plaintiff's first contention that he was not consulted, the Court notes that Plaintiff clearly has not been prejudiced by Defendants' failure to consult with him regarding an extension of time. In fact, it appears that the Clerk of Court directed Defendants to file their Motion for an Extension without consulting Plaintiff because Plaintiff had failed to respond to Defendants when they had requested a previous extension of time. Thus, Defendants' actions are clearly not

grounds for sanctions.[10]

With respect to Plaintiff's second contention, the Court finds that Defendants' failure to file their Rule 7.1 Disclosure Statement four days late has in no way prejudiced Plaintiff. In addition, there is no indication that Defendants purposely delayed filing this statement. Therefore, the Court finds no basis upon which to sanction Defendants for their tardiness in filing their disclosure statement.

Plaintiff's primary basis for sanctions is his third contention that Defendants' Response to Plaintiff's Second Motion to Amend and their Brief in Opposition to Plaintiff's Second Motion to Amend were improperly served upon him. Thus, he believes that these documents should be stricken from the record. It is clear, however, that Plaintiff was properly served with these documents but Defendants made typographical errors in the certificates of service attached to these documents. In the certificates of service, Defendants inadvertently represented that these documents were mailed to Plaintiff on December 24, 2002, when in fact they were mailed to Plaintiff on March 24, 2003, which is the date they were filed with this Court. It is obvious that Defendants made inadvertent, typographical errors in these certificates of service that were not intended to confuse anyone. Federal Rule of Civil Procedure 4(*l*) states that "[f]ailure to make proof of service does not affect the validity of the service. The court may allow proof of service to be amended." Therefore, as the district court held in *Brown v. Pfizer, Inc.*, No. CV 96–2846(JG), 1996 WL 706836 (E.D.N.Y. Nov. 21, 1996), "misfiling of the proof of service should likewise not affect effectiveness of service" and does not warrant requiring a party to re-serve its opponent. *Id.* at *1. Therefore, Plaintiff's request that the Court strike these documents from

the record is without merit. Instead, as did the Court in *Brown*, the Court orders the Clerk to revise these certificates of service to reflect the true date of service of March 24, 2003. *See id.* Having found Plaintiff's Motion for Sanctions to be without merit, the Court will now consider Plaintiff's First and Second Motions to Amend.

## VI. PLAINTIFF'S MOTIONS TO AMEND

### A. Procedural History

As discussed previously, Plaintiff has filed two motions to amend his Complaint. In Plaintiff's First Motion to Amend, Plaintiff basically moves the Court to allow him to add Tyco U.S. as a defendant with respect to each of Plaintiff's eight claims. Defendants do not oppose Plaintiff's First Motion to Amend. (Defs.' Resp. Pl.'s Mot. Amend Compl. [Doc. # 18] at 2.) When Plaintiff filed his First Motion to Amend, however, he did not include a proposed Amended Complaint to supersede his original Complaint. Therefore, although Defendants did not object to the substance of Plaintiff's First Motion to Amend, they requested that he file an actual Amended Complaint to clear up the record.

Plaintiff instead filed a Second Motion to Amend, requesting leave of this Court to make numerous changes to his original Complaint. Attached to this Motion is a proposed Amended Complaint. Unlike Plaintiff's First Motion to Amend, Defendants move this Court to deny Plaintiff's Second Motion to Amend. As noted above, Plaintiff's First Motion to Amend only sought to add Tyco U.S. to each of Plaintiff's claims. Because Plaintiff's Second Motion to Amend also contains an identical request to add Tyco U.S. as a defendant to each claim, it supersedes Plaintiff's First Motion to Amend in its entirety. Therefore, the Court deems it appro-

---

10. Defendants also contend that under Local Rule 6.1(a), they are technically not required to consult a pro se plaintiff prior to moving for an extension of time. Local Rule 6.1(a) states, in pertinent part, that "[a]ll motions for an extension of time to perform an act required or allowed to be done within a specified time must show ... prior consultation with opposing counsel, and the views of opposing counsel." Thus,

because there is no "opposing counsel" representing Plaintiff, Defendants contend that they technically did not need to consult with Plaintiff prior to moving for an extension of time. In light of the Court's disposition of Plaintiff's Motion on other grounds, the Court specifically declines to decide Defendants' argument in this regard.

priate to deny Plaintiff's First Motion to Amend as moot. As such, the Court will focus its analysis on Plaintiff's Second Motion to Amend to determine whether this Motion should be granted in whole, granted in part, or denied.

### B. Motion to Amend Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). While the decision to grant a party leave to amend a pleading is within the sound discretion of the trial court, that discretion is limited by the general policy favoring the resolution of cases on the merits. *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir.1987). In exercising its discretion in resolving the question of whether to allow leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.'" *Id.* (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980)). The Fourth Circuit Court of Appeals has held "that mere delay in moving to amend is 'not sufficient reason to deny leave to amend,' [but] it is only when '[t]he delay is accompanied by prejudice, bad faith, or futility'" that the district court should deny leave. *Id.* (second and third alterations in original) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir.1986)).

In this case, Defendants only object to Plaintiff's Second Motion to Amend on the grounds of futility and prejudice. Therefore, in determining whether to grant Plaintiff's Second Motion to Amend, the Court will focus on whether Plaintiff's amendments are futile or will prejudice Defendants.

### 1. Whether Plaintiff's Proposed Amendments Should Be Denied as Futile

It is well-settled that a court may deny leave to amend if the amendments are futile. The court should deny leave on this basis only "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986) (citing *Davis*, 615 F.2d at 613). Amendments that would fail to help state a claim under Rule 12(b)(6) are futile. *See, e.g., New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir.1994); *Shanks v. Forsyth County Park Auth., Inc.*, 869 F.Supp. 1231, 1238–39 (M.D.N.C.1994). Applying this standard, the Court will address Plaintiff's proposed amendments paragraph by paragraph to determine which amendments are—and which amendments are not—futile.

The Court finds that Plaintiff's proposed amendments to the following paragraphs are not futile: 1, 2, 3, 4,[11] and 7.[12] Therefore, the Court finds it unnecessary to further address these proposed amendments in its Memorandum Opinion, and Plaintiff is permitted to add these allegations to his Amended Complaint. Plaintiff is further permitted to "amend all paragraphs of [his] Complaint to use the terms 'International' to mean Tyco International Ltd., 'Electronics' to mean Tyco Electronics Corporation, and 'Tyco (US)' to mean Tyco International (US) Inc." (Pl.'s 2d Mot. Amend at 2.) The Court will now discuss whether the remaining amend-

---

**11.** Plaintiff's proposed revisions to paragraph 1 allege that Plaintiff is pursuing remedies under the PSLRA and ERISA. Plaintiff's proposed revisions to paragraph 2 allege that Plaintiff brings his claims "pursuant to the Exchange Act, PSLRA, ADEA, the Uniform Commercial Code, ERISA, contract law, and [the] North Carolina General Statutes." Plaintiff's proposed revisions to paragraph 3 allege that this Court has jurisdiction over this action pursuant to the PSLRA and ERISA. Plaintiff's proposed revisions to paragraph 4 allege that venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and 29 U.S.C. § 1132(e)(2). (Pl.'s 2d Mot. Amend at 2.)

**12.** Plaintiff's proposed revision to paragraph 7 adds the following statement: "The Retirement Committee of Tyco International (US) Inc. is the plan administrator of the Tyco Electronics Pension Plan ('TEPP') and the Tyco Retirement Savings and Investment Plan ('RSIP')." The Court notes that Defendants seem to have previously conceded that the Retirement Committee is a proper party for Plaintiff's ERISA claims.

ments proposed by Plaintiff should be denied on the grounds of futility.

### a. Proposed Amendments to Plaintiff's Second and Sixth Claims

Plaintiff requests leave to amend paragraph 23 of his Complaint to add Tyco US, the Retirement Committee, and Tyco Electronics as defendants to his second claim (the 401(k) or RSIP claim). Plaintiff further requests leave to amend paragraph 47 of his Complaint to add Tyco US, the Retirement Committee, and Tyco International as defendants to his sixth claim (the pension plan or TEPP claim). As discussed more fully above in Section IV.B.1, the Court has already ruled that, at least at this stage of the lawsuit, Plaintiff's second claim may proceed against Tyco International and his sixth claim may proceed against Tyco Electronics. Defendants conceded in earlier filings with this Court that Tyco U.S. and the Retirement Committee would be proper defendants to both Plaintiff's second and sixth claims. Therefore, Plaintiff may add these two entities as defendants to both of his claims.

Defendants argue, however, that Plaintiff should not be allowed to add Tyco Electronics as a defendant to Plaintiff's second claim or Tyco International as a defendant to Plaintiff's sixth claim because they have no fiduciary responsibility over the RSIP or the TEPP, respectively. The Court finds that, at this stage of the proceedings, it would be inappropriate for the Court to deny Plaintiff's request to add Tyco Electronics as a defendant to his second claim and Tyco International as a defendant to his sixth claim because the Court does not believe that Defendants have demonstrated, as a matter of law, that Plaintiff could not also maintain his second claim against Tyco Electronics and his sixth claim against Tyco International. *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (holding that generally "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (alteration in original) (internal quotations omitted)); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

The Court will therefore allow Plaintiff's proposed amendments to paragraphs 23 and 47 of his Complaint. As such, Plaintiff may amend his Complaint to assert claims against Tyco Electronics, Tyco International, Tyco US, and the Retirement Committee with respect to his second and sixth claims. In allowing Plaintiff to add these parties, the Court does not express any opinion on whether Plaintiff will ultimately prevail against any of these entities, only that, at this stage of the proceedings, adding them as defendants is not clearly futile.

### b. Proposed Amendments to Plaintiff's First, Third, Fourth, and Fifth Claims

Plaintiff also requests leave to amend paragraphs 18, 29, 35, and 41 of his Complaint. These proposed amendments are designed solely to add parties to Plaintiff's first (mileage reimbursement), third (shareholder proposal), fourth (age discrimination), and fifth (early retirement) claims, respectively. As discussed more fully above, however, the Court has dismissed these claims for various reasons, none of which involved suing the wrong party. Therefore, Plaintiff's attempt to amend his Complaint to assert his first, third, fourth, and fifth claims against additional parties is futile. The Court will therefore deny Plaintiff's Motion with respect to the proposed amendments to paragraphs 18, 29, 35, and 41 of his Complaint.

In addition, Plaintiff requests leave to amend paragraph 44 to modify his fifth (early retirement) claim to assert a Fourteenth Amendment claim against Tyco Electronics, Tyco International, Tyco US, and the Retirement Committee. It is well settled, however, that the Fourteenth Amendment only limits state action and therefore does not apply to Tyco Electronics, Tyco International, Tyco US, or the Retirement Committee. *See, e.g., Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). As such, Plaintiff's proposed amendment in this regard is futile and is therefore denied.

### c. Proposed Amendments to Plaintiff's Seventh Claim

With respect to Plaintiff's seventh claim, in which Plaintiff actually pursues multiple em-

ployment claims related to wages, benefits, and state income tax withholding, Plaintiff seeks to amend paragraph 54 to add Tyco International and Tyco U.S. as defendants to this claim. As discussed more fully above, the Court has dismissed most of Plaintiff's seventh claim as being barred by the applicable statutes of limitation and has also directed Plaintiff to file a more definite statement with respect to Plaintiff's purported denial-of-insurance claim. In response to Plaintiff's Second Motion to Amend, Defendants contend that adding Tyco International and Tyco U.S. as defendants is inappropriate because Plaintiff is only employed by Tyco Electronics, not Tyco International or Tyco US. Plaintiff responds to this argument as follows: (1) he was originally employed by AMP, whose stock was acquired by Tyco International on April 1, 1999; (2) he was terminated on April 29, 1999; and (3) on September 13, 1999, AMP became Tyco Electronics. Thus, Plaintiff contends that it is unclear, at this stage of the proceedings, which entity actually terminated him on April 29, 1999. (Pl.'s Reply Br. Supp.2d Mot. Amend [Doc. # 34] at 3.) This Court agrees with Plaintiff to the extent that, at this stage of the proceedings, adding Tyco International and Tyco U.S. is not clearly futile, especially in light of the Tyco conglomerate's complicated corporate structure. In addition, the Court notes that, with respect to Tyco US, Defendants did not object to Plaintiff's addition of Tyco U.S. as a defendant to Plaintiff's seventh claim when Plaintiff filed his First Motion to Amend. For the foregoing reasons, therefore, the Court will, in its discretion, permit Plaintiff to add Tyco U.S. and Tyco International as defendants to that portion of Plaintiff's seventh claim which remains.

### d. Proposed Amendments to Plaintiff's Eighth Claim

With respect to Plaintiff's eighth claim (securities fraud claim), Plaintiff seeks to amend paragraphs 63 and 65. The Court found previously that the allegations in Plaintiff's original Complaint are insufficient to survive Tyco International's Motion to Dismiss because they lacked the particularity required by the Private Securities Litigation Reform Act ("PSLRA"). In anticipation of this Court's ruling, Plaintiff seeks to amend paragraph 63 of his Complaint to incorporate by reference SEC litigation releases in an attempt to comply with the enhanced pleading requirements of the PSLRA. The Court notes that Federal Rule of Civil Procedure 10(c) governs incorporation by reference in pleadings. It provides as follows: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." "Although Rule 10(c) is not expressly limited to pleadings in the same action, it has been held that allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference." 5 Charles Alan Wright and Arthur Miller, *Federal Practice and Procedure* § 1326, at 757–58 (2d ed.1990); *cf. Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 (5th Cir.2001) (holding that the plaintiff could not present evidence by adopting into her Complaint the findings of fact from a court's opinion in a separate case). In the present case, the Court finds that Plaintiff's incorporation by reference of the SEC litigation releases is inappropriate. Therefore, Plaintiff's proposed amendment to paragraph 63 is denied. The Court, however, in its discretion, will permit Plaintiff to restate, within his Amended Complaint, his allegations of securities fraud. Plaintiff is cautioned that he must comply with the pleading requirements of the PSLRA because failure to do so will warrant dismissal of his claim.

Plaintiff further seeks to amend paragraph 65 to add Tyco U.S. and the Retirement Committee as defendants to Plaintiff's eighth claim (securities fraud claim). Defendants respond that Tyco U.S. and the Retirement Committee are not proper parties for Plaintiff's claims. As Plaintiff points out, however, in response to Plaintiff's First Motion to Amend to add Tyco U.S. as a party to each of Plaintiff's claims, Defendants specifically stated that they did not object to Tyco U.S. being added as a party. The Court will not accept Defendants' subsequent objection to such an amendment. Furthermore, the Court cannot find, at this stage of the proceedings, that Plaintiff's eighth claim against

Tyco U.S. and the Retirement Committee is clearly futile, especially in light of the fact that the Court has granted Plaintiff leave to replead this claim to satisfy the requirements of the PSLRA. The Court will therefore permit Plaintiff to add Tyco U.S. and the Retirement Committee as defendants with respect to his eighth claim.

### e. Proposed Amendment with Respect to Relief Requested

Plaintiff finally seeks to amend paragraph "a)" of the section of his Complaint in which he sets forth the relief he is seeking. Plaintiff's proposed amendments to paragraph "a)" request the Court to provide the following relief:

(2) Awarding extra-compensatory damages in favor of plaintiff against all defendants, jointly and severally, where allowable by law;

(3) Awarding punitive damages in favor of plaintiff against all defendants, jointly and severally, where allowable by law.

(Pl.'s 2d Mot. Amend at 3.) In Defendants' Brief in Opposition to Plaintiff's Second Motion to Amend, Defendants do not specifically address whether these proposed amendments are futile. At this stage of the proceedings, the Court finds that it is unnecessary to address the futility of these amendments related to Plaintiff's request for relief. Plaintiff will therefore be allowed to amend his Complaint to add these allegations.

### 2. Whether Plaintiff's Remaining Proposed Amendments Would Prejudice Defendants

The Court must now determine whether any of Plaintiff's amendments that the Court found not to be futile should nonetheless be denied as prejudicial to Defendants. The Court first notes that "[i]f an amendment 'is proposed late enough' and requires the opponent 'to engage in significant new preparation' or results in the 'added expense and the burden of a more complicated and lengthy trial,' prejudice may be found." *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir.1997) (quoting 6 Wright Miller & Kane, *supra*, § 1487, at 623–26 (2d ed.1990)). Prejudice may also be found when a plaintiff belatedly moves to amend and "[t]he proof required to defend against [his] new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary." *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir.1987). However, the Fourth Circuit Court of Appeals has held that while "[i]t is true that prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, ... that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986). Furthermore, a "plaintiff typically will not be precluded from amending ... [his] ... complaint simply because that amendment may increase defendant's potential liability." 6 Wright & Miller, *supra*, § 1487, at 629 (2d ed.1990).

In the present case, Defendants contend that granting Plaintiff's Second Motion to Amend will prejudice Defendants. Specifically, Defendants contend that "[b]ecause plaintiff's proposed amendments would raise so many new issues, many of which are futile, Defendants would be unduly prejudiced because they will be forced to expend even more attorneys' fees and costs in responding to any amendment." (Defs.' Br. Opp. Pl.'s 2d Mot. Amend at 9–10.) Defendants further contend that allowing Plaintiff's amendments will confuse a jury. To the extent that Defendants contend that this Court should deny Plaintiff's Second Motion to Amend as being unduly prejudicial, the Court finds Defendants' arguments unpersuasive. First, the Court finds that Plaintiff has not belatedly moved to amend his Complaint. It is still quite early in the procedural progression of this litigation; there has been no discovery, and no trial date has been set. Second, to the extent that Defendants now contend that Plaintiff should not be allowed to add Tyco U.S. as a party, as previously noted, Defendants did not object to Plaintiff's First Motion to Amend to add Tyco U.S. as a party. Third, the Court does not find Plaintiff to be raising "so many new issues." In fact, the

primary purpose of Plaintiff's Second Motion to Amend is to add parties, not claims. Plaintiff has only attempted to add one additional claim, a Fourteenth Amendment claim, to his Complaint, and the Court has denied this additional claim as being futile. Fourth, as discussed above, the Court has dismissed in their entirety Plaintiff's first, third, fourth, and fifth claims with prejudice. In addition, the Court has dismissed Plaintiff's eighth claim with leave to amend and his seventh claim with instructions for Plaintiff to file a more definite statement as to that portion of the claim that remains.

Therefore, the only claims that will remain are Plaintiff's second (RSIP), sixth (TEPP), and eighth (securities fraud) claims, as well as part of Plaintiff's seventh claim (benefits and/or breach-of-contract claim). Tyco U.S. cannot claim surprise with respect to any of these claims in light of Defendants' concession to Plaintiff's First Motion to Amend to add Tyco U.S. as a defendant to all eight original claims. With respect to Plaintiff's second and sixth claims, Tyco U.S. and the Retirement Committee also cannot complain about being added as parties to these claims in light of Tyco Electronics' and Tyco International's apparent admissions in their respective briefs that Tyco U.S. and the Retirement Committee are the proper defendants for Plaintiff's second and sixth claims. With respect to the remaining parties and claims, the Court finds that allowing Plaintiff to add Tyco Electronics as a defendant to Plaintiff's second claim, Tyco International to Plaintiff's sixth claim, and the Retirement Committee to Plaintiff's eighth claim will not prejudice these entities.

Defendants, however, are apparently quite concerned that Plaintiff's tactic of suing multiple entities in each count will confuse a jury and therefore allowing Plaintiff to add parties at this juncture would be prejudicial. Defendants cite no authority for this argument, and the Court finds this argument to be unpersuasive. The Court again notes that it is quite early in the procedural progression of this litigation. Defendants (including the new entities added as defendants) will have ample opportunity prior to trial to file motions to dismiss and/or for summary judg-

ment to ensure that the various claims are asserted against the appropriate parties. Jury confusion would also not be a concern with respect to Plaintiff's ERISA claims because these claims would be tried before this Court and not a jury.

In summary, therefore, the Court finds that the Court's limited grant of Plaintiff's Second Motion to Amend will not prejudice Tyco Electronics, Tyco International, Tyco US, or the Retirement Committee.

### C. Conclusion with Respect to Plaintiff's First and Second Motions to Amend

In summary, therefore, the Court will deny as moot Plaintiff's First Motion to Amend. The Court will grant in part and deny in part Plaintiff's Second Motion to Amend. The Court therefore will direct Plaintiff to file an Amended Complaint within thirty days of the entry of this Court's Order. This Amended Complaint must be filed in a manner consistent with the Court's rulings herein and the directions in the Order attached to this Memorandum Opinion.

## VII. CONCLUSION

For the reasons stated herein, Tyco International's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) and (3) [Document # 10] is denied. Tyco Electronics' Motion to Dismiss pursuant to Rule 12(b)(6) [Document # 8] and Tyco International's Motion to Dismiss pursuant to Rule 12(b)(6) [Document # 12] are granted in part and denied in part. Specifically, Defendants' Motions to Dismiss are granted with respect to Plaintiff's first, third, fourth, fifth, and parts of his seventh claims, and these claims are dismissed with prejudice. In addition, to the extent that Plaintiff's second and/or sixth claims (his ERISA claims) seek extracontractual compensatory or punitive damages, a jury trial, or relief pursuant to ERISA subsection 502(a)(2), these claims are dismissed with prejudice. The remaining portion of Plaintiff's seventh claim is dismissed with instructions for Plaintiff to provide a more definite statement of this claim pursuant to Rule 12(e). Finally, Plaintiff's eighth claim is dismissed with leave for Plaintiff to amend this claim as noted by the Court.

Based on the Court's disposition of these Motions pursuant to Rule 12(b)(6), Defendants' Motions for Judgment on the Pleadings [Documents # 8, # 12] are denied as moot. Plaintiff's Motion for Sanctions [Document # 35] is denied. Plaintiff's Second Motion to Amend [Document # 28] is granted in part and denied in part as explained in Section VI of this Opinion. Based upon the disposition of Plaintiff's Second Motion to Amend, Plaintiff's First Motion to Amend [Document # 17] is denied as moot. Finally, because oral argument would not significantly aid the decisional process, the Court will deny Defendants' request for oral argument.

An Order consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

## ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Tyco International Ltd.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) and (3) [Document # 10] is DENIED.

IT IS FURTHER ORDERED that Tyco Electronics Corporation's Motion to Dismiss pursuant to Rule 12(b)(6) [Document # 8] and Tyco International Ltd.'s Motion to Dismiss pursuant to Rule 12(b)(6) [Document # 12] are GRANTED in part and DENIED in part. Specifically, Defendants' Motions to Dismiss are GRANTED with respect to Plaintiff's first, third, fourth, fifth, and parts of his seventh claims, and these claims are DISMISSED with prejudice. Defendants' Motions to Dismiss are also GRANTED with respect to Plaintiff's second and sixth claims to the extent that either or both of these claims seek extracontractual compensatory or punitive damages, a jury trial, or relief pursuant to ERISA subsection 502(a)(2), and to that extent these claims are therefore DISMISSED with prejudice. A portion of Plaintiff's seventh claim is DISMISSED with instructions for Plaintiff to provide a more definite statement of this claim pursuant to Rule 12(e). Finally, Plaintiff's eighth claim is DISMISSED with leave for Plaintiff to amend this claim.

IT IS FURTHER ORDERED that Defendants' Motions for Judgment on the Pleadings [Documents # 8, # 12] are DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions [Document # 35] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Complaint [Document # 17] is DENIED as moot. Plaintiff's Second Motion to Amend Complaint [Document # 28] is GRANTED in part and DENIED in part as explained in Section VI of the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that Defendants' request for oral argument is DENIED.

The Clerk of Court is DIRECTED to Amend the Certificates of Service attached to Defendants' Response to Plaintiff's Second Motion to Amend Complaint [Document # 32] and Defendants' Brief in Opposition to Plaintiff's Second Motion to Amend Complaint [Document # 33] to reflect the true date of service of March 24, 2003.

Plaintiff is therefore HEREBY ORDERED to file an Amended Complaint within thirty (30) days of the entry of the Court's Order. The Amended Complaint must comply with the Court's instructions in Section VI of the accompanying Memorandum Opinion. Plaintiff is therefore ORDERED to make the following modifications to his Complaint:

1. Delete his current first, third, fourth, and fifth claims from his Amended Complaint because the Court has dismissed these claims in their entirety.

2. Add, if he so desires, consistent with the ruling stated in the accompanying Memorandum Opinion, the proposed amendments to paragraphs 1, 2, 3, 4, 7, 23, 47, 54, and a) of the Complaint.

3. Provide, consistent with this Court's discussion in Section IV.B.5.b.(3) of the Court's Memorandum Opinion, a more definite statement of what is currently designated as Plaintiff's seventh claim. Plaintiff is therefore directed to state additional facts to clarify his claim that

Tyco Electronics, Tyco US, and/or Tyco International "denied continuation of plaintiff's medical, dental, and vision insurance for eighteen (18) months." Accordingly, Plaintiff is ordered to make sufficient allegations to put Defendants and this Court on notice of the nature of this claim and the relief Plaintiff seeks. Other than providing a more definite statement of this particular aspect of his seventh claim, Plaintiff is further ordered to delete the remaining portions of Plaintiff's seventh claim because the Court has dismissed those portions with prejudice.

4. Amend, consistent with the Court's instructions in Section IV.B.2 and Section VI of the Court's Memorandum Opinion, what is currently designated as Plaintiff's eighth claim to state a claim in conformity with the requirements of the PSLRA. In addition, Plaintiff is permitted to add Tyco U.S. and the Retirement Committee as parties to Plaintiff's eighth claim.

The Court also reminds Plaintiff that he must serve the Amended Complaint on all defendants in accordance with the nationwide-service-of-process provisions of the Securities Exchange Act and ERISA, as well as the provisions of Federal Rule of Civil Procedure 4.